**HOUSTON CHRONICLE PUBLISHING COMPANY, Appellant,**

v.

**CITY OF HOUSTON, et al., Appellees.**

No. A2658.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Aug. 5, 1981.

Rehearing Denied Sept. 10, 1981.

William W. Ogden, Liddell, Sapp, Zivley, Brown & LeBoon, Houston, for appellant.

Edward A. Cazares, City Atty., W. Torrance Fiddes, Asst. City Atty., Houston, for appellees.

Before J. CURTISS BROWN, C. J., and JUNELL and MURPHY, JJ.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a trial court judgment upholding the constitutionality of a city ordinance banning sales of *newspapers* to occupants of motor vehicles while such vehicles are on public streets or public property.

The Houston Chronicle Publishing Company ("the Chronicle" or "appellant") publishes and distributes a daily newspaper of general circulation, known as the Houston Chronicle. Prior to July 14, 1976, one of appellant's customary methods of distribution was to "sell" its newspapers to enterprising street vendors, called "hawkers," who were primarily children. The hawkers would take to the streets and sidewalks of Houston and offer the papers for sale to pedestrians and occupants of motor vehicles in their vicinity. During any given business day approximately 1700 occupants of motor vehicles purchased newspapers distributed in this fashion. In response to increasing numbers of complaints from the public relating to the effect of "streetcorner" sales on traffic flow and safety, the City of Houston ("the city" or "appellee") passed a regulatory ordinance affecting such sales. On July 14, 1976, the ordinance (Ordinance Number 76–1190, § 1 also known as Section 41–10.3 of the Code of Ordinances of the City of Houston) became effective, as follows:

Sec. 41–10.3. Sale of newspapers on public property.

A person may sell and/or install any nonelectrical apparatuses for the sale of daily or weekly newspapers on sidewalks, or other public property or property dedicated to the public use *provided, however, it shall be unlawful for any person to sell or offer for sale any newspaper to any occupant of any vehicle which is in a street or on other public property, whether or not such vehicle is moving, stopped or parked and whether or not the person selling or offering for sale such newspaper is, or is not, on a public street or on public property* and providing further, it shall be unlawful for any person selling or offering for sale any newspaper to impede the free passage of persons on sidewalks or other public property or to install any apparatus used for sale of newspapers where such apparatus will impede or interfere with the free passage of persons on sidewalks or other public property.

It shall be unlawful for any person to cause or aid a minor in conduct prohibited by this section or to provide newspapers to a minor with knowledge that the minor intends to sell or offer for sale such newspapers in contravention of this section. (Ordinance No. 76–1190, § 1, effective July 14, 1976).

Sec. 1–7. General penalty; continuing violations.

Whenever in this Code or in any ordinance of the city an act is prohibited or is made or declared to be unlawful or an offense or a misdemeanor ... and no specific penalty is provided therefor, the violation of any such provision of this Code or any such ordinance shall be punished by a fine of not exceeding two hundred dollars ($200.00).... Each day any violation of this Code or of any ordinance shall continue shall constitute a separate offense. (Code 1958, § 1–6).

After July 14, 1976, appellant ceased the practice of distributing newspapers through street vendors and filed suit against the city and then-mayor Fred Hofheinz seeking a declaratory judgment of the constitutionality of Section 41–10.3 and a permanent injunction against enforcement of the ordinance by city officials. The trial court found the ordinance constitutional.

We disagree and hold that the ordinance in question is overbroad on its face and abridges the right to free speech and free press secured by the due process clause of

the Fourteenth Amendment to the United States Constitution (and by Article 1, Section 8 of the state constitution) and the right to equal protection of the laws secured by the Fourteenth Amendment (and by Article 1, Section 3 of the state constitution). The City defends the ordinance on the grounds that (1) the ordinance is valid because it does not regulate the content of speech, but instead regulates a business or trade; (2) the ordinance is a valid exercise of the municipality's police power, rationally aimed at facilitating traffic flow and protecting the young hawkers from bodily harm and (3) the ordinance reasonably regulates the time, place and manner of newspaper sales and does not make the paper unavailable to the public.

The city correctly asserts that commercial speech is afforded a lesser degree of protection under the First and Fourteenth Amendments than is noncommercial speech. *Metromedia, Inc. v. City of San Diego,* —— U.S. ——, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). Commercial speech is that speech through which the speaker proposes no more than a commercial transaction. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Newspapers are sold for profit and they contain commercial speech (in the form of advertisements), but all of the speech contained therein is not so limited in purpose.

Publication and dissemination of information and opinion are protected by the First and Fourteenth Amendments even when conducted under commercial auspices, such as offering newspapers, magazines and other journals for sale. *New York Times Co. v. Sullivan,* 376 U.S. 254, 266, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964); *Smith v. State of California,* 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959); *Grosjean v. American Press Co.,* 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). Furthermore, free press protections extend to the means of distribution of information, as well as the content and ideas. *Jamison v. State of Texas,* 318 U.S. 413, 63 S.Ct. 669,

87 L.Ed. 869 (1943); *Lovell v. City of Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938). Access to public streets has long been regarded as an essential element of freedoms of speech and of the press. *Flower v. United States,* 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972); *Schneider v. State of New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Cf. Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177 (Tex.Civ.App.—Houston [14th Dist.] 1975), *writ ref'd n.r.e. per curiam* 536 S.W.2d 559 (Tex.1976). Right of access includes the related right to distribute printed material. *Flower v. United States,* 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653; *Philadelphia Newspapers, Inc. v. Borough Council, Borough of Swarthmore,* 381 F.Supp. 228 (E.D.Penn. 1974). It is irrelevant that the Chronicle is distributed by a profit-oriented commercial concern and that the impact of the ban on total sales of the Chronicle is minimal.

Traffic control and safety are substantial governmental goals, legitimate interests of a municipality and rational bases for the exercise of police power. *Metromedia, Inc. v. City of San Diego,* —— U.S. ——, ——, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800; *Heffron v. International Society for Krishna Consciousness, Inc.,* —— U.S. ——, 101 S.Ct. 2559, 69 L.Ed. 298 (1981); *Jamison v. State of Texas,* 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869; *Cox v. State of New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). This fact alone does not justify an attempted regulation of fundamental freedoms of expression. In assessing the constitutionality of attempted regulations of the right of access to the public streets, the court must balance the diverse legitimate interests of the municipality under its police power against the preferred status of First and Fourteenth Amendment rights. *Metromedia, Inc. v. City of San Diego,* —— U.S. ——, ——, 101 S.Ct. 2882, 2889, 69 L.Ed.2d 800; *Saia v. State of New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); *Schneider v. State of New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155. A total ban of a particular medium of expres-

sion must be closely scrutinized to assess the substantiality of the governmental interests asserted and to determine if the intended objectives of the enactment could be fulfilled by a more narrowly-drawn provision, less restrictive of such preferred rights. *Schad v. Borough of Mount Ephraim*, —— U.S. ——, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). Reasonable restrictions on the time, place and manner of the exercise of First and Fourteenth Amendment rights will be upheld if they are justified without reference to the content of the regulated speech and are narrowly drawn, limiting the restrictions to those necessary to protect significant governmental interests. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Iranian Muslim Organization v. City of San Antonio*, 615 S.W.2d 202, 205–206 (Tex.1981). Once a governmental regulation is shown to impinge on First and Fourteenth Amendment rights, the burden falls on the government to show the validity of its asserted interest and the absence of less intrusive alternatives. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Heffron v. International Society for Krishna Consciousness, Inc.*, —— U.S. ——, ——, 101 S.Ct. 2559, 2569, 69 L.Ed.2d 298 (J. Brennan, concurring in part and dissenting in part).

■ The city argues that the ordinance reasonably regulates only a certain manner of expression (sales of newspapers to motor vehicle occupants) in a particular place (public streets and public property). The city's defense of the ordinance as a reasonable time, place, and manner restriction is principally based on four facts: (1) the public complained of the traffic hazard and congestion created by the activity proscribed by the ordinance, (2) the hawkers nearby always stood on medians or esplanades at heavily-trafficked intersections, (3) the traffic in two particular locations in the city where hawkers used to sell to cars is so constant and voluminous that such sales create a hazard regardless of the time of

day they are made, and (4) the extreme youth or advanced age of the hawkers makes them especially vulnerable in traffic. The city's objectives are both laudable and compelling. The question before us is not whether similar regulations would be unconstitutional if limited to freeways, to certain streets, to areas off-limits to pedestrians, to particular areas or intersections of the city, or to particular times of the day. The issue presented by this appeal is whether the city could achieve the stated objectives of the ordinance by a more narrowly-drawn provison. While the city did not completely bar appellant's access to the street (the hawkers can still sell to pedestrians), we have no doubt that the objectives do not justify such a broad ban of newspaper sales. The city has banned newspaper sales by persons of all ages to occupants of all motor vehicles located on public property, including residential neighborhoods regardless of the time of day or night and regardless of whether the cars are moving, standing, parked or even not in the traffic lanes.

The challenged ordinance is unreasonably restrictive. While the ends are permissible, the means of achieving those ends—the ordinance—sweep too broadly, unnecessarily invading appellant's protected freedoms. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73; *Philadelphia Newspapers, Inc. v. Borough Council*, 381 F.Supp. 228. The ordinance is therefore void as written.

The ordinance also fails to withstand equal protection analysis. It must be read in conjunction with companion ordinances regulating sales of "food, goods, wares, or merchandise on streets or sidewalks," specifically Sections 41–10, 41–10.1, 41–10.2 and 41–10.3 of the Code of Ordinances of the City of Houston. Section 41–10 makes it unlawful to sell "any foodstuffs of any nature, any liquids, or any other goods, wares or merchandise . . . on any sidewalk, street, parkway, esplanade or any other public property or any property dedicated to public use," excepting "licensed flower

vendors ... in full compliance with ..." appropriate ordinances (i. e. Section 41–10.-1), "persons selling frozen desserts ... in full compliance with..." appropriate ordinances (i. e. Section 41–10.2), and "persons selling newspapers in full compliance with..." appropriate ordinances (i. e. Section 41–10.3). Section 41–10.1 then permits and regulates licensed sales of flowers on streets and sidewalks. Section 41–10.2 permits and regulates licensed sales of frozen desserts from vehicles on streets and sidewalks.

These ordinances establish three special classes of street vendors: (1) those selling flowers; (2) those selling frozen desserts; and (3) those selling newspapers. Section 41–10.3 also establishes two classes of people distributing newspapers to occupants of motor vehicles on public property—those *selling* newspapers and those *giving away* newspapers.

Appellee contends that appellant has not been denied equal protection of the laws because no *other* newspaper publishing company may sell newspapers to drivers of vehicles, and because the type of licensed selling which is permitted is not sufficiently similar to street sales of newspapers to establish appellant's right to complain of differential treatment. The city misunderstands the manner in which appellant, flower vendors, and frozen dessert vendors are similarly situated. They are all vendors of merchandise selling on public sidewalks and streets—all other potential vendors have been excluded from such activity—and as such are similarly situated.

 Equal protection questions involve inquiry into three subjects: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. If fundamental rights are affected, the classification becomes suspect, and the state must show that the classification is necessary to promote a compelling state interest. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). If other interests are affected, then the state must show

that the classification is rationally related to a permissible purpose of the legislation, such that similarly situated persons are treated alike. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Rights of free speech and free press are fundamental, therefore the *Blumstein* test applies. Sufficient regulatory interests may justify selective exclusions from a public forum because conflicting demands on the same place may compel the state to choose from among several potential users and uses, but such justifications will be carefully scrutinized. *Police Department of City of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

The city attempts to justify the classification of street vendors by the degree of interference with traffic associated with each activity. The city says flower sellers are not as large a group in number as newspaper hawkers, hence create less interference, and frozen dessert sellers operate only in residential neighborhoods, therefore interfere less. Assuming flower sellers interfere less than newspaper hawkers, the city does not deny that they contribute to traffic congestion and run the same risk of bodily injury. While traffic control and vendor safety are compelling interests, access to the street cannot be denied on those bases to those who would there exercise fundamental rights, yet allowed to those involved in purely commercial endeavors.

Concerning the frozen dessert sellers, there is no evidence that they operate in residential neighborhoods only. Even if they do, we assume that the city permits such activity because there is less traffic congestion to contend with in such areas. If this is true, then no basis exists for excluding newspaper vendors from such areas. Appellee's position is both inconsistent and insufficient to justify selective exclusion of sales of newspapers to occupants of vehicles located on all public streets or all public property throughout the city.

Neither appellant nor appellee has discerned the discriminatory treatment accorded those selling newspapers to such occupants and those giving newspapers to such

occupants for free. We recognize that commonsense differences between sales of literature and free distribution of literature may justify differential treatment. *See Heffron v. International Society for Krishna Consciousness, Inc.,* —— U.S. ——, ——, 101 S.Ct. 2559, 2572, 69 L.Ed.2d 298 (J. Blackmun, concurring in part, and dissenting in part). Therefore, we will not address this problem except to say that selective exclusion from a public forum cannot be justified by a lack of commercial context alone. The ordinance violates appellant's right to equal protection under the law and is therefore void as written.

We reverse the judgment of the trial court upholding the validity of Ordinance Number 76–1190 (Code of Ordinances of the City of Houston, § 41–10.3) and render judgment that the ordinance is unconstitutional on its face and therefore void as written. In view of our judgment concerning the constitutionality of the ordinance, we reverse that portion of the trial court judgment denying appellant's request for injunctive relief and remand such cause to the court below with instructions to enter an injunction against continued enforcement of the ordinance in accordance herewith.

Reversed and rendered in part, reversed and remanded in part.