Antonio DOMINGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00343–CR.

Court of Appeals of Texas,
El Paso.

April 20, 1995.

Fred J. Morton, El Paso, for appellant.

Herbert M. Flemming, City Prosecutor, El Paso, for state.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

LARSEN, Justice.

This appeal mounts a constitutional challenge to an El Paso city ordinance prohibiting any person from soliciting, selling, or distributing any material to an occupant of any motor vehicle stopped on a public roadway at a traffic light. Finding the ordinance serves the legitimate government interest in traffic control and safety, and that it does so in a permissibly narrow manner, we affirm the conviction.[1]

### FACTS

Antonio Dominguez has sold newspapers on the street corners of El Paso for over ten years. In August 1993, he was convicted of violating El Paso City Ordinance 10752 § 12.32.060, which prohibits any person within a public roadway from soliciting, selling, or distributing any material to the occupant of any vehicle stopped on a public roadway in obedience to a traffic control light. Id. After the municipal court overruled his constitutional challenge to the ordinance, he pleaded nolo contendre and was assessed court costs of $23. He appealed to the municipal court of appeals, which affirmed the conviction. He brings appeal now to this Court.

The ordinance at issue specifically permits an adult to solicit, sell, or distribute material on the street, so long as the seller remains out of the roadway itself.[2] Mr. Dominguez's

---

1. Thus answering Lennon and McCartney's question: "why don't we do it in the road?"

2. It appears that the ordinance was created primarily as a means of controlling solicitation and selling in the roadways by *children.* The ordinance's preamble recites City Council's concern with the dramatic increase in children soliciting rides and business, that this practice had been identified as unsafe, and that action was necessary before a tragic accident occurred. The ordinance prohibits children under twelve from soliciting or selling from the roadway or from the side of the road. Adults, in contrast, are merely prohibited from selling in the roadway itself. The ordinance in its entirety reads as follows:

   **12.32.060 Soliciting rides or business—Prohibitions.**

   A. No person who is within a public roadway may solicit or sell or distribute any material to the occupant of any motor vehicle stopped on a public roadway in obedience to a traffic control signal light. It is specifically provided that a person, other than a person twelve years of age or younger, may solicit or sell or distribute material to the occupant of a motor vehicle on a public roadway so long as he or she remains on the surrounding sidewalks, medians, islands and unpaved shoulders, and not in or on the roadway itself.

   B. No occupant of a motor vehicle may contribute to, accept or purchase material from any other person who is on any public roadway, or from a person twelve years of age or younger who is on the surrounding sidewalks, medians, islands and unpaved roadway, while the motor vehicle is stopped in obedience to a traffic control signal. It is specifically provided that a person may contribute to, accept or purchase material from a person, other than a person twelve years of age or younger, who is on the surrounding sidewalks, medians, islands and unpaved shoulders, and not in or on the roadway itself.

   C. It is unlawful for a person who is twelve years of age or younger to stand on a roadway,

evidence indicates that ordinance enforcement is spotty at best, with police officers frequently nodding their assent to a newspaper sale in the road. Mr. Dominguez concedes he violated the ordinance, but claims it is an unconstitutional infringement on his rights to contract and free speech.

### FIRST AND FOURTEENTH AMENDMENT CHALLENGES

■ In his second point of error, Mr. Dominguez claims that the city ordinance violates his rights of freedom of speech and of the press, in violation of the U.S. Constitution's First Amendment, made applicable to the states through the Fourteenth Amendment.

■ It is clear that the right to sell newspapers is protected by the first amendment. *New York Times Co. v. Sullivan,* 376 U.S. 254, 266, 84 S.Ct. 710, 718, 11 L.Ed.2d 686, 698 (1964); *Jamison v. State of Texas,* 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); *Houston Chronicle Publishing Co. v. City of Houston,* 620 S.W.2d 833, 836 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ). Any government body attempting to curtail this activity bears the burden of justifying the regulation. *Id.* It is equally clear that the street is a public forum. *Flower v. U.S.,* 407 U.S. 197, 198, 92 S.Ct. 1842, 1843, 32 L.Ed.2d 653, 655 (1972). In such a public forum, government regulation of the time, manner, and place of first amendment activities are permitted only if they "are justified without reference to the content of the regulated speech ... are narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information."

*Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221, 227 (1984). *Association of Community Organizations for Reform Now a/k/a ACORN v. St. Louis County,* 930 F.2d 591, 594 (8th Cir.1991).

Here there is no contention that the regulation is anything but content-neutral; appellant concedes as well that safety and traffic control are legitimate government concerns. Mr. Dominguez contends, however, that the ordinance is impermissibly broad, and that as a practical matter, it leaves no alternative means for the dissemination of news. We must disagree.

In examining this regulation, we do not travel uncharted waters. Many cities have ordinances prohibiting solicitation, distribution, and sales in roadways; many courts have examined ordinances similar to the one at issue here. *Id.; International Society for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge,* 876 F.2d 494 (5th Cir.1989); *ACORN v. City of Phoenix,* 798 F.2d 1260 (9th Cir.1986); *U.S. Labor Party v. Oremus,* 619 F.2d 683 (7th Cir.1980); *Houston Chronicle,* 620 S.W.2d 833, 836.

In determining that an ordinance within the City of Phoenix was a permissible time, place, and manner restriction on solicitation of contributions by a political organization, the Ninth Circuit made the following observation:

Unlike oral advocacy of ideas, or even the distribution of literature, successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure

---

traffic median, shoulder, improved shoulder or sidewalk to solicit or attempt to solicit or sell or distribute or attempt to sell or distribute any material to the occupant of any motor vehicle stopped on a public roadway or to assist or be with a person lawfully conducting any such activities otherwise permitted by this section.

D. It is unlawful for a person to knowingly cause a person twelve years of age or younger to stand on a roadway, traffic median, shoulder, improved shoulder or sidewalk to solicit or attempt to solicit or sell or distribute or attempt to sell or distribute any material to the occupant of any motor vehicle stopped on a public roadway.

E. It is unlawful for a person, without the effective consent of an occupant, to intentionally or knowingly touch or strike or cause an object to touch or strike a vehicle stopped on a public roadway in obedience to a traffic control signal light, during an act of soliciting rides or business from the occupants of the vehicle.

F. For purposes of this chapter, the term 'cause' shall mean aid, direct, hire, encourage, permit or allow. (Ord. 10752 § 1, 1991: Ord. 9097, 1987: Ord. 8984, 1987: prior code § 20–112).

any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a motor vehicle driver. The direct personal solicitation from drivers distracts them from their primary duty to watch the traffic and potential hazards in the road, observe all traffic control signals or warnings, and prepare to move through the intersection. *ACORN v. City of Phoenix,* 798 F.2d at 1269.

Appellant unsuccessfully attempts to distinguish his situation from that described in the City of Phoenix case. Mr. Dominguez claims that the act of selling newspapers is far less disruptive than concerted efforts at fundraising by religious or political groups. He reasons that motorists can readily identify vendors standing on the sidewalk or median holding a newspaper and decide in an instant whether they want to buy one. The cost of a paper is presumably known to all, and it is the motorist, not the vendor, who commonly "solicits" the transaction. The time involved in completing the transaction is momentary. Thus, appellant urges, we should not compare solicitation of political or religious contributions with the sale of a newspaper.

■ We are not persuaded by appellant's attempts to distinguish these activities. First, we note that any ordinance allowing newspaper sales in the roadway, while prohibiting other types of first amendment activity, would run seriously afoul of the requirement that any time, place, and manner restriction must be content-neutral. See *Houston Chronicle Publishing Co.,* 620 S.W.2d at 838.[3] Second, we simply do not perceive the activities discussed in the *Krishna* and *ACORN* cases as dramatically different from the newspaper sales at issue here.

All involve dodging vehicles stopped for traffic signals; all involve distracting a motorist from the primary business of driving; all involve a search for money, and receipt of change. All create, to some degree, a safety hazard and potential traffic problem. We conclude the city acted in a rational manner in prohibiting all such activity, and that the ordinance is not overbroad.

With regard to Mr. Dominguez's claim that the ordinance leaves no alternative means for disseminating news, this claim seems a variation of his first point of error, where he urges that the city ordinance violates his right of liberty to contract, guaranteed to him by the U.S. Constitution's Fourteenth Amendment. As these seem to raise basically the same argument, we will address them together. Appellant contends that the ordinance's facial acknowledgement of his right to sell newspapers from sidewalks, medians, traffic islands, and unpaved shoulders is mere artifice. It ignores reality, he claims, as he is unable to consummate sales without entering the roadway, particularly where vehicles are in a middle lane of traffic, not accessible to a sidewalk, median, island, or shoulder. Appellant further asserts that the impractical nature of this ordinance is evidenced by its uneven (indeed, almost nonexistent) enforcement by local police.

■ We find that Mr. Dominguez's argument is faulty in two ways: first, we note he is not precluded from selling newspapers altogether, but only from doing so by entering a roadway to reach motorists stopped at a traffic light.[4] Just because the City has precluded him from selling in the way he finds most efficacious, does not mean he is left without any means of selling papers at

3. This is one important feature which distinguishes the ordinance in *Houston Chronicle* from the one at issue here. The Houston ordinance prohibited newspaper sales, while allowing the sale of flowers and frozen desserts. The Court found there was no legitimate reason for distinguishing between these activities, and that therefore the ordinance violated equal protection considerations. The ordinance here, in contrast, prohibits any sales, solicitation, or distribution in the road.

4. This is a second distinction between the ordinance at issue here and the one found constitu-

tionally infirm in *Houston Chronicle,* 620 S.W.2d at 836. There, newspaper vendors were prohibited from selling to any motorist on a public street, without regard to whether the car was stopped, moving, or even parked, and without regard to whether the vendor was in the roadway or remained on the sidewalk or median. We agree that such an ordinance is an overbroad attempt to regulate traffic and enhance public safety. The ordinance here, however, is more carefully tailored to achieve its legitimate goal through a less restrictive means.

all. Indeed, he admits that there are a number of sales methods not precluded by the ordinance: he may sell papers on sidewalks to pedestrians, in public parks and public buildings, and on the street so long as he does not step into the road. Second, Mr. Dominguez has pointed us to no authority that holds the right to sell newspapers in a roadway is a liberty interest protected by the Constitution. Certainly he would not argue he has a constitutionally protected interest in selling newspapers on the freeway, or to moving automobiles travelling through an intersection with the green light. We conclude this ordinance an appropriate extension of such rules based on valid safety considerations.

■ Next, Mr. Dominguez complains of selective enforcement of the ordinance; he argues that the structure of the law allows police officers unbridled discretion to enforce the ordinance or not, at their whim. While it seems the ordinance is, in the main, not enforced at all, a citing officer does possess some discretion, as in enforcement of most traffic laws. Certainly, we think it is logical that an officer would be more likely to cite clearly dangerous behavior, while allowing reasonably safe conduct to continue, even where it violated the ordinance. This discretion is not a defect in the ordinance, but is simply a fact of life in the enforcement of traffic laws. We do not perceive how this enforcement, or lack of it, renders the ordinance unconstitutional.

■ Finally, Mr. Dominguez claims the ordinance infringes on the *motorist's* first amendment right to receive information. He correctly notes that the freedom of speech necessarily protects the right to receive information, as well as the right to disseminate it. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). That right cannot be asserted vicariously, however, as appellant has attempted here. *Al–Omari v. State,* 673 S.W.2d 892, 896 (Tex.App.—Beaumont 1983, pet. ref'd). Because Mr. Dominguez cannot assert the constitutional rights of another, we do not reach this portion of his argument.

Appellant's first and second points of error are overruled. We affirm the conviction.