

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 4, 1995

The Honorable Fred Hill
Chair
Committee on Urban Affairs
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-367

Re: Constitutionality of the statute that permits local authorities to authorize persons to stand in roadways to solicit certain charitable contributions but not other contributions (RQ-794)

Dear Representative Hill:

You ask whether the 1989 amendment to what then was section 81(c) of V.T.C.S. article 6701d and now is Transportation Code section 552.007(a)[1] (the "1989 amendment" or the "amendment") is unconstitutional. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 342, 1989 Tex. Gen. Laws 1310. You wish to know specifically whether a local regulation or permit authorizing a person, pursuant to the 1989 amendment, to stand in a roadway to solicit certain charitable contributions would violate free speech or equal protection guarantees by permitting certain expressive conduct based on its content while the statute prohibits other similar expressive conduct.

Before the amendment of section 81(c) in 1989, *see id.*, the provision prohibited all solicitation of contributions as follows: "No person shall stand in a roadway for the purpose of soliciting a ride, contributions, employment or business from the occupant of any vehicle." V.T.C.S. art. 6701d, § 81(c) (Vernon 1977). The 1989 amendment changed section 81(c) as follows: "*A* [No] person *may not* [shall] stand in a roadway for the purpose of soliciting a ride, contributions, employment or business from the occupant of any vehicle, *except that a person may stand in a roadway to solicit charitable contributions if authorized to do so by the local authority having jurisdiction over the roadway.*" Act of May 18, 1989, 71st Leg., R.S., ch. 342, § 1, 1989 Tex. Gen. Laws 1310, 1310 (additions italicized; deletions stuck over and bracketed). The amendment also provided that "[t]he definition of charitable organizations shall meet those established by the federal Internal Revenue Service." *Id.* § 2(c)[2]; *see* 26 U.S.C. § 170(c) (defining

---

[1] The Seventy-fourth Legislature has recodified section 81(c) as section 552.007(a) of the new Transportation Code. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, sec. 1, § 552.007(a), 1995 Tex. Sess. Law Serv. 1025, 1698. The legislature intended no substantive change in the law by the enactment of the Transportation Code. *Id.* § 25, at 1871. The Transportation Code became effective on September 1, 1995. *Id.* § 27, at 1871.

[2] The Seventy-fourth legislature has codified section 2(c) as Transportation Code section 552.007(c), which now reads as follows: "In this section, 'charitable contribution' means a contribution

*charitable contribution*). The 1989 amendment thus permits certain charitable solicitations if they are authorized by the local authority.

For the following reasons, we are of the opinion that the amendment is not valid under the First and Fourteenth Amendments of the Constitution unless the amendment's discrimination against all other solicitation is narrowly drawn and necessary to serve a compelling state interest. Because this determination involves questions of fact, we are unable to decide in an attorney general opinion whether the statute is unconstitutional.

The First Amendment's free speech guarantee protects solicitation of funds. *E.g.*, *Village of Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620, 629 (1980).[3] Even begging or panhandling is sufficiently communicative to warrant First Amendment protection:

> Begging frequently is accompanied by speech indicating the need for food, shelter, clothing, medical care or transportation. Even without particularized speech, however, the presence of an unkempt and disheveled person holding out his or her hand or a cup to receive a donation itself conveys a message of need for support and assistance. We see little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed. The former are communicating the needs of others while the latter are communicating their personal needs. Both solicit the charity of others. The distinction is not a significant one for First Amendment purposes.

*Loper v. New York City Police Dep't*, 999 F.2d 699, 704 (2d Cir. 1993) (citation omitted).

Protected speech is subject, however, to a government's "power to preserve the property under its control for the use to which it is lawfully dedicated." *Greer v. Spock*. 424 U.S. 828, 836 (1976). The permissible extent of governmental regulation of access to

---

(footnote continued)
to an organization defined as charitable by the standards of the United States Internal Revenue Service."
*See* sec. 1, § 552.007(c), at 1698.

[3]In *Village of Schaumburg*, Justice White wrote for the Court as follows regarding the expressive characteristics of solicitation of money:

> Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money.

444 U.S. 620, 632 (1980).

its property for speech purposes varies depending on the nature of the forum. *Cornelius v. NAACP Legal Defense & Educ. Fund. Inc.*, 473 U.S. 788, 800 (1985).

> The Supreme Court has developed three categories to analyze expressive conduct in varying public forums, namely: 1) the traditional public forum; 2) the quasi-public forum; and 3) the non-public forum. Traditional public forums include those places historically devoted to assembly and debate; quasi-public forums consist of places the state has designated for open public discourse. A state may regulate expressive conduct occurring in either of these forums if the state demonstrates a compelling interest or implements a valid time, place, and manner restriction. The third category involves non-public forums, such as municipal buses or military bases, within which the state may regulate expressive conduct if the regulation is rationally based and content neutral.

*Valenzuela v. Aquino*, 853 S.W.2d 512, 516-17 (Tex. 1993) (Gonzales, J., dissenting) (citations omitted).

It is settled law that streets are traditional public forums. *E.g., United States v. Grace*, 461 U.S. 171, 177 (1983). A governmental authority has the responsibility to impose nondiscriminatory restrictions necessary to promote movement on streets, and such restrictions "cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection." *Cox v. Louisiana*, 379 U.S. 536, 554-55 (1965). The Supreme Court has set forth the constitutional standards applicable to regulation of speech in streets and parks as follows:

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." In these quintessential public forums, the government may not prohibit all communicative activity. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)) (citations omitted).

The first standard quoted above from *Perry*, the one applicable to content-based exclusions, appears to be essentially the same as the standard applicable under the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court held in *Carey v. Brown*, 447 U.S. 455, 461-62 (1980): "When government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." If the State classifies persons in a manner that discriminatorily affects their exercise of fundamental rights, it must show a compelling interest to justify the classification. *See Dunn v. Blumstein*, 405 U.S. 330, 335-36 (1972). Free speech rights are fundamental; therefore the compelling-interest test applies to classifications based on speech. *City of Angeles Mission Church v. City of Houston*, 716 F. Supp. 982, 986 (S.D. Tex. 1989); *Houston Chronicle Publishing Co. v. City of Houston*, 620 S.W.2d 833, 838 (Tex. Civ. App.--Houston [14th Dist.] 1981, no writ). To pass muster under the Equal Protection Clause, the State must also show that the classification is necessary to promote the compelling interest. *City of Angeles Mission Church*, 716 S. Supp. at 986; *Houston Chronicle Publishing Co.*, 620 S.W.2d at 838; *see Dunn*, 405 U.S. at 337.

With these principles in mind, we now proceed to analyze the amendment's exception of certain charitable contributions from its general prohibition against solicitation of contributions.[4] Transportation Code section 552.007(a) restricts both the

---

[4]You do not question, and we do not consider, the constitutionality of the general prohibition of section 552.007(a) against standing in a roadway to "solicit[] a ride, contributions, employment or business from the occupant of any vehicle." We assume for purposes of your request that the prohibition is constitutionally valid. We note that the following cases deal with similar prohibitions:

In *International Society for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494 (5th Cir. 1989), the court upheld, as a valid place restriction under the First Amendment, a city and parish ordinance that completely banned solicitation of employment, business, or charitable contributions from occupants of vehicles by persons on streets or roadways or on shoulders or neutral grounds of streets or roadways. Disagreeing with the argument that the ordinance was not narrowly tailored because it applied to all streets and roadways without regard to traffic speed, width of neutral ground, or presence of stop signals, the court found that the evidence supported the trial court's finding that there was no way to make solicitation safe on any street or roadway. *Id.* at 498.

Likewise, in *ACORN v. City of Phoenix*, 798 F.2d 1260 (9th Cir. 1986), the court upheld, as a valid place restriction, a Phoenix ordinance that prohibited standing on a street or highway and soliciting employment, business, or contributions from vehicle occupants. The court concluded that the ordinance was narrowly tailored based on the trial court's finding that the mere presence on the roadways of persons soliciting contributions and distributing literature posed a safety hazard. *Id.* at 1270. Although the city's evidence did not directly refute all of ACORN's evidence that purportedly showed many specific intersections where solicitation could occur safely, the court found support in the record for the trial court's finding based on testimony that solicitation generally posed a traffic hazard. *Id.* at 1269-70.

Compare *Houston Chronicle Publishing Co. v. City of Houston*, 620 S.W.2d 833 (Tex. Civ. App.--Houston [14th Dist.] 1981, no writ), in which the court concluded that a Houston ordinance that banned sales of newspapers to occupants of vehicles located in a street or on any other public property was unconstitutionally overbroad under the First Amendment because it applied to all "motor vehicles located

place ("in a roadway") and the manner ("from the occupant of any vehicle") of speech. Therefore, the contribution-solicitation portion of section 552.007(a) can be valid only if it passes one of two tests: (1) it is "content-neutral, [is] narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels of communication," *Perry Educ. Ass'n*, 460 U.S. at 45 (collecting authorities), or (2) it "is necessary to serve a compelling State interest and . . . is narrowly drawn to achieve that interest," *Cornelius*, 473 U.S. at 800; *Perry Educ. Ass'n*, 460 U.S. at 45.

For purposes of the first test, "content-neutral" speech restrictions are "those that 'are *justified* without reference to the content of the regulated speech.' *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 96 S. Ct. 1817, 1830, 48 L. Ed.2d 346 (1976) (emphasis added)." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986). Thus, for example, an ordinance that prohibits adult movie theaters from locating within a certain distance from homes, churches, parks, or schools may pass muster if the restriction is aimed at preventing crime, protecting retail business, maintaining property values, and dealing with other secondary effects of the theaters rather than suppressing the showing of adult movies because they are controversial or objectionable. *See id.*

We believe the 1989 amendment fails the first test as a matter of law because it is content-based. The amendment describes permissible solicitation in terms of the subject of the solicitation, that is, charitable contributions. Furthermore, although the question of content-neutrality will usually involve factual analysis, we believe that the discrimination between charitable solicitation and other solicitation simply cannot be justified under any set of facts without reference to the content of the solicitation. Generally, solicitation of contributions from vehicle occupants poses substantial traffic safety concerns:

> Unlike oral advocacy of ideas, or even the distribution of literature, successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a motor vehicle driver. The direct personal solicitation from drivers distracts them from their primary duty to watch the traffic and potential hazards in the road, observe all traffic control signals or warnings, and prepare to move through the intersection.

*ACORN v. City of Phoenix*, 798 F.2d 1260, 1269 (9th Cir. 1986). These concerns are no less substantial when the solicited contribution is intended for a qualified charitable

---

(footnote continued)
on public property, including residential neighborhoods regardless of the time of day or night and regardless of whether the cars are moving, standing, parked or even not in the traffic lanes." *Id.* at 837.

organization under section 55 2.007(a). The only justification for the exception for charitable contributions--that the benefit accruing from collection of charitable funds outweighs the risk of harm from allowing solicitors to stand in traffic lanes--is based on the *primary* impact of the solicitation, not on any relatively more adverse *secondary* effects of other solicitation. Put another way, such a justification is based on impermissible discrimination between subjects of speech based on perceived differences in the value of the messages themselves. Because the 1989 amendment fails the content-neutrality prong of the test for time, place, and manner restrictions, we need not consider the other two prongs of the first test: whether the restriction is narrowly tailored to serve a significant government interest and leaves open ample alternative channels of communication.

We therefore now consider whether the 1989 amendment passes the second test set forth above. As a content-based prohibition on solicitation, the amendment must be narrowly drawn and necessary to achieve a compelling state interest. *See Perry Educ. Ass'n*, 460 U.S. at 46; *Widmar v. Vincent*, 454 U.S. 263, 269-70 (1981); *Dunn*, 405 U.S. at 337; *City of Angeles Mission Church*, 716 F. Supp. at 986. The Supreme Court has engaged in "the most exacting scrutiny in cases in which a State undertakes to regulate speech on the basis of its content." *Widmar*, 454 U.S. at 276. Questions of fact are integral to the determination of the necessity of this discriminatory prohibition to achieve a compelling interest and of its tailoring in achieving that interest. Because we are not authorized to determine questions of fact in an attorney general opinion, we may not decide whether the amendment passes the second test of its constitutionality.

## S U M M A R Y

The 1989 amendment to what then was section 81(c) of V.T.C.S. article 6701d and now is Transportation Code section 552.007(a) (the "amendment"), which amendment permits local authorities to authorize persons to stand in roadways to solicit certain charitable contributions but prohibits solicitation of other contributions, Act of May 18, 1989, 71st Leg., R.S., ch. 342, 1989 Tex. Gen. Laws 1310, establishes a content-based speech restriction. The amendment therefore is not valid under the First and Fourteenth Amendments of the Constitution unless the provision's discrimination against all solicitation other than certain charitable solicitation is narrowly drawn and necessary to serve a compelling state interest.

Yours very truly,

DAN MORALES
Attorney General of Texas

p. 1998

*JORGE VEGA*
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by James B. Pinson
Assistant Attorney General