OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

February 8, 2002

The Honorable Tony Goolsby
Chair, Committee on House Administration
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0460

Re: Authority of a home-rule city to create a civil offense for the disregard of a traffic control signal and to use automated enforcement systems for traffic control (RQ-0426-JC)

Dear Representative Goolsby:

On behalf of the City of Richardson you ask whether state law permits the city to adopt an ordinance making the disregard of a traffic-control signal within the city a civil violation, rather than a criminal one, and authorizing the use of automated enforcement equipment to identify red-light violations at roadway intersections. We conclude that because state law provides that the disregard of a traffic-control device is a criminal violation, and because cities are prohibited from enacting ordinances that conflict with state law, the City of Richardson may not adopt a valid ordinance making the disregard of a traffic-control signal a civil, rather than a criminal, offense. The city is not, however, prohibited from adopting an ordinance to use automated enforcement equipment at intersections.

The City of Richardson is a home-rule city. A home-rule city derives its legislative authority directly from the Texas Constitution. *See* TEX. CONST. art. XI, § 5; *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975). It has full powers of self-government and authority to adopt charter provisions and ordinances not inconsistent with the constitution or general law. *See* TEX. CONST. art. XI, § 5 ("The adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."); *Dallas Merch. 's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490 (Tex. 1993); *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 18 (Tex. 1990). Thus, a home-rule city looks to legislation for limits on its power, rather than for authorizations of power. *See Lower Colo. River Auth.*, 523 S.W.2d at 643. Because a home-rule city derives its powers directly from the constitution, its powers may be limited or preempted by statute only when the legislature's intention to do so appears with unmistakable clarity. *See Dallas Merch. 's & Concessionaire's*, 852 S.W.2d at 490. The state's entry into a field of legislation does not mean that the entire subject matter is completely preempted. *See id.* at 491. A state law and a city ordinance will not be held to be repugnant to each other if any other reasonable construction leaving both in effect can be reached. *See id.* (citing *City of Beaumont v. Fall*, 291 S.W.

202 (1927)). Your questions require us to determine whether the City of Richardson's proposed ordinance is limited by or conflicts with state law.

As a general rule, in the absence of constitutional or statutory limits, a home-rule city may use its police powers to adopt traffic-control ordinances. *See Houston Chronicle Publ'g Co. v. City of Houston*, 620 S.W.2d 833, 836 (Tex. Civ. App.–Houston [14th Dist.] 1981, no writ). The Texas Legislature, however, has acted in the area of traffic regulation. While not completely preempting city powers with respect to traffic regulation, the legislature has placed clear limitations on a city's authority.

Transportation Code title 7, subtitle C, sets out the "Rules of the Road" regulating traffic in this state. The code places limitations on a city's power to enact laws with respect to roadways under the city's jurisdiction. The general rule is this:

> This subtitle applies uniformly throughout this state. A local authority may not enact or enforce an ordinance or rule that conflicts with this subtitle unless expressly authorized by this subtitle. However, a local authority may regulate traffic in a manner that does not conflict with this subtitle.

TEX. TRANSP. CODE ANN. § 542.201 (Vernon 1999); *see also id.* § 541.002(3) (defining "local authority" to include "a county, municipality, or other local entity authorized to enact traffic laws under the laws of this state"). Other, more specific limitations on cities' powers are set out in various parts of subtitle C. *See, e.g., id.* § 542.203(a) (local authority may not erect traffic-control device on state highway without permission of Texas Department of Transportation).

Subtitle C also recognizes the power of a local authority to regulate traffic within its boundaries in specific ways, such as by regulating parking, designating intersections as stop or yield intersections, designating school crossing zones and one-way streets, and altering a speed limit within statutory limitations. *Id.* § 542.202(a)(2), (8), (11), (12) (Vernon Supp. 2002); *see also id.* §§ 545.061, .065, .302, .356, .365 (Vernon 1999 & Supp. 2002). Construing the predecessor statute to title 7, subtitle C, of the Transportation Code, Attorney General Opinion JM-1009 opined that the Transportation Code recognizes that a city need not rely solely on the code for authority to adopt traffic ordinances and confirms that the statute is a limitation on power. The opinion summarized a city's powers under the code as follows:

> [A] city may adopt three kinds of traffic ordinances. First, a city may adopt ordinances that implement article 6701d and incorporate its provisions. Second, a city may promulgate ordinances that implement but are in conflict with article 6701d where the statute authorizes a departure from its standards. Third, a city may adopt ordinances that regulate forms of traffic not governed by article 6701d.

Tex. Att'y Gen. Op. No. JM-1009 (1989) at 4. Thus, we must examine the City of Richardson's proposed ordinance in light of state law governing the same conduct.

Transportation Code section 544.007(d) requires a driver to stop at a red light and makes it a crime not to do so:

> (d) An operator of a vehicle facing only a steady red signal shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop before entering the crosswalk on the near side of the intersection. A vehicle that is not turning shall remain standing until an indication to proceed is shown. After stopping, standing until the intersection may be entered safely, and yielding right-of-way to pedestrians lawfully in an adjacent crosswalk and other traffic lawfully using the intersection, the operator may:
>
> (1) turn right; or
>
> (2) turn left, if the intersecting streets are both one-way streets and a left turn is permissible.

TEX. TRANSP. CODE ANN. § 544.007(d) (Vernon 1999). Under the Transportation Code, traffic violations are criminal offenses: "A person commits an offense if the person performs an act prohibited or fails to perform an act required by this subtitle." *Id.* § 542.301. An offense under subtitle C is a misdemeanor, unless otherwise provided, *id.*, and is punishable by a fine of not less than $1 or more than $200, *id.* § 542.401. Subtitle C also contains provisions relating to the disposition of fines collected by a city or county, and the arrest and prosecution of violators. *See id.* §§ 543.001-.010 (Vernon 1999 & Supp. 2002).

The City of Richardson proposes an ordinance that would create a civil offense for the disregard of a traffic control signal and allow the city to use photographic traffic signal enforcement systems at intersections within the city. A system would consist of "a camera system installed to work in conjunction with an electrically operated traffic-control signal" that "is capable of producing a recorded image that depicts the license plate attached to a motor vehicle that is not operated in compliance with the instructions of the traffic-control signal."[1] In other words, if a vehicle ran a red light, a camera mounted atop a pole in the intersection would automatically snap a picture of the car's license plate.

---

[1]*See* Letter from the Honorable Tony Goolsby, Chair, Committee on House Administration, Texas House of Representatives, to Office of the Attorney General, State of Texas (Aug. 28, 2001) (on file with Opinion Committee) (enclosure of City of Richardson, Tex. Proposed Ordinance, article VII, section 22-185(3)) [hereinafter City of Richardson, Tex. Proposed Ordinance].

The city's ordinance would impose a civil penalty on the owner of a motor vehicle if the vehicle is operated in violation of section 544.007(d) of the Transportation Code:

**Sec. 22-186. Imposition of Civil Penalty for Red Light Violations.**

(a) Except as provided in (b) and (c) below the owner of a motor vehicle is liable for a civil penalty of seventy-five dollars ($75) if, while facing only a steady red signal displayed by an electrically operated traffic control signal located in the City, the vehicle is operated in violation of the instructions of that traffic control signal, contrary to Section 544.007(d) of the Texas Transportation Code.

(b) For a third or subsequent violation committed by the same owner of a motor vehicle during any 12-month period, the amount of the civil penalty shall be one hundred dollars ($100).

(c) A person who fails to timely pay the civil penalty shall be subject to a late payment penalty of fifty dollars ($50).

*See supra* note 1, City of Richardson, Tex. Proposed Ordinance, art. VII, § 22-186. The penalty would be imposed by mailing a summons to the owner of the vehicle. *See id.* § 22-187. The owner of the vehicle could contest the penalty in an administrative hearing. *See id.* § 22-188. In any such hearing, it would be presumed that the registered owner of the vehicle is the person who operated the vehicle at the time and place of the violation. *See id.* § 22-190. No penalty would be assessed on the vehicle owner if the operator of the vehicle was issued a citation or arrested for the same violation. *See id.* § 22-191(b). According to the ordinance, the imposition of a civil penalty under the ordinance "is not a criminal conviction for any purpose." *Id.* § 22-191(a).

We see the proposed ordinance as differing from section 544.007(d) of the Transportation Code in three significant ways. First, it would impose a penalty upon the *owner* of the car for his or her presumed conduct, rather than upon the driver for the driver's conduct. Second, an offense under the proposed ordinance would be a *civil* offense, adjudicated in an administrative procedure, rather than a criminal offense. And third, the penalty under the proposed ordinance would be $75, while under state law the penalty is not less than $1 or more than $200.

Although the City of Richardson in its initial letter described the ordinance as "decriminalizing" the offense of running a red light, the city has clarified that the proposed ordinance would not eliminate the state criminal offense in the city.[2] Certainly, a city may not suspend the

---

[2]*See* Letter from Peter G. Smith, Nichols, Jackson, Dillard, Hager & Smith, L.L.P., to Honorable Tony Goolsby, State Representative, at 1 (Aug. 24, 2001) (asking for help in requesting opinion concerning "authority of the City [of Richardson] to enact local legislation to decriminalize the disregard of a traffic control signal"); Brief from Peter

(continued...)

operation of a state law. *See* TEX. CONST. art. I, § 28 ("No power of suspending laws in this State shall be exercised except by the Legislature."); *Brown Cracker & Candy Co. v. City of Dallas*, 137 S.W. 342, 343 (Tex. 1911). Thus, the proposed ordinance would not prevent a law enforcement officer from stopping and ticketing a driver for a violation of section 544.007(d) of the Transportation Code. However, under the ordinance, an arrest or issuance of a criminal citation under section 544.007(d) would preclude the imposition of a civil penalty upon the vehicle's owner. The City of Richardson therefore argues that the proposed ordinance does not conflict with the Transportation Code, but creates an entirely different, nonconflicting, civil offense.

We believe that the ordinance proposed by the City of Richardson conflicts with state law. In our view, the legislature has clearly and unmistakably indicated its intent to regulate exclusively the conduct proscribed by the "Rules of the Road," unless it expressly provides otherwise. Subtitle C "applies uniformly throughout this state" except where otherwise permitted by the legislature. *See* TEX. TRANSP. CODE ANN. § 542.201 (Vernon 1999). The legislature has expressly listed areas where a local government authority may regulate, and has permitted traffic regulations in other areas not regulated by the Transportation Code. *See* Tex. Att'y Gen. Op. No. JM-1009 (1989) at 4. While the proposed ordinance creates a civil rather than a criminal red-light offense, it nevertheless seeks to regulate the *same conduct* regulated by state law – *i.e.*, the running of a red light. And while it purports to fine the owner of the vehicle rather than the driver, it creates a presumption that the owner of the vehicle *is* the person who operated the vehicle at the time and place of the violation, thereby intending, in our view, to penalize the operator. Only the nature of the punishment—civil versus criminal—and the corresponding procedures and penalty amounts, are different.

A city ordinance is invalid if it prescribes a greater, lesser, or different punishment than that fixed by state law for the same unlawful act. *See Honeycutt v. State*, 627 S.W.2d 417, 420 (Tex. Crim. App. [Panel Op.] 1981); *Young v. State*, 267 S.W.2d 423, 424-25 (1954); *Ex Parte Watson*, 225 S.W.2d 850, 851-52 (1949); Tex. Att'y Gen. Op. No. JC-0048 (1999) at 2. "If the state denounces an offense and fixes the punishment for it, and the city or town undertakes to pass an ordinance punishing the same offense, then the ordinance must be the same as the state law both as to definition and as to punishment." *Ex Parte Farley*, 144 S.W. 530 (1912). While the Texas courts cited above applied this rule in cases where a city proposed a criminal ordinance with a different penalty than the state criminal penalty, we believe that the same reasoning applies when a city proposes to impose a civil rather than a criminal penalty for the same conduct. An Ohio court applying the same test used by Texas courts took this view in considering whether a home-rule city's criminal ordinance conflicted with a state civil statute prohibiting the same conduct:

> In enacting [the city ordinance], [the City of] Youngstown changed the classification of the offense of committing deceptive acts

---

²(...continued)
G. Smith, Nichols, Jackson, Dillard, Hager & Smith, L.L.P., to Office of the Attorney General, State of Texas, at 4-7 (Aug. 24, 2001) (clarifying that proposed ordinance would not eliminate state criminal offense) (documents on file with Opinion Committee).

or practices in connection with consumer transactions from a civil violation to a criminal violation. Comparatively, if changing a misdemeanor offense to a felony, or vice versa, is in conflict with general state law, changing the classification of an act from a civil to a criminal violation would also be in conflict. Therefore, Youngstown has created an ordinance that is in conflict with a general law of the state, and, as a result, [the city ordinance] is unconstitutional.

*State v. Rosa*, 716 N.E.2d 216, 219 (Ohio Ct. App. 1998). In our view, section 544.007(d) of the Transportation Code regulates the same conduct sought to be regulated by the proposed ordinance, and the City of Richardson may not adopt an ordinance that departs from state law unless it is expressly authorized to do so. *See* Tex. Att'y Gen. Op. No. JM-1009 (1989) at 4.

We believe this case is distinguishable from cases that have upheld city ordinances that are more broad or more narrow than the state law, or which regulate different conduct. For example, in *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17 (Tex. 1990), at issue were a city ordinance and a state law that regulated the keeping of vicious animals. The city ordinance applied to all animals, while the state law applied only to dogs. The city ordinance addressed broadly the control of animals, while the state law required only that an owner restrain a dog and carry insurance coverage. And the city ordinance applied to animals that "might" be dangerous, while the state law applied only to dogs that had already taken a "first bite." The court found that because the scopes of the two laws were different, they were not inconsistent. *See Responsible Dog Owners*, 794 S.W.2d at 19. And in *Ex Parte Dickson*, 261 S.W.2d 709 (1953), the court considered whether a city ordinance proscribing "reckless driving" was in conflict with a provision in the predecessor to the Transportation Code, also proscribing "reckless driving." An essential element of the city ordinance offense was a collision between vehicles, while the state offense was complete without the occurrence of a collision. The court concluded that the two provisions did not conflict. *See Dickson*, 261 S.W.2d at 710. By contrast, the ordinance proposed by the City of Richardson seeks to regulate the same conduct regulated by section 544.007(d) of the Transportation Code and penalize the presumed operator of the vehicle. *See Knott v. State*, 648 S.W.2d 20, 21 (Tex. App.–Dallas 1983, no pet.). We find the city ordinance to be in conflict with state law.

We recognize that both a criminal penalty and a civil fine may be imposed for the same conduct, provided the civil fine does not create a "punishment" that would preclude prosecution for both offenses pursuant to the double jeopardy provisions of the United States and Texas Constitutions. *See* U.S. CONST. art. V; TEX. CONST. art. I, § 4; *Tharp v. State*, 935 S.W.2d 157, 160-61) (Tex. Crim. App. 1996) (en banc) (double jeopardy prohibits multiple punishments for the same offense). In fact, the legislature has expressly authorized certain cities to impose civil penalties for parking and stopping violations that otherwise would be misdemeanors under state law. *See* TEX. TRANSP. CODE ANN. § 682.002(a) (Vernon Supp. 2002) ("A municipality may declare the violation of a municipal ordinance relating to parking or stopping a vehicle to be a civil offense."). But our opinion in this case is not based upon double jeopardy grounds. Rather, we believe that such an

ordinance could be adopted by the city if the legislature amended state law so as to expressly permit it or otherwise eliminate the conflict.

While we conclude that a city ordinance creating a civil red-light violation is impermissible, we do not find any constitutional or statutory impediment to the adoption by the City of Richardson of an ordinance authorizing the use of automated enforcement equipment to identify criminal red-light violations at roadway intersections. The Transportation Code does not prescribe the method of traffic-law enforcement for local authorities, and cities may use their police powers to choose the method of enforcement.

In answering this question, we considered the question of whether the proposed automated enforcement equipment is a "traffic-control device" that must meet certain requirements under the Transportation Code. Any traffic-control device placed or maintained by a city must conform to the manual adopted by the Texas Transportation Commission. *See* TEX. TRANSP. CODE ANN. §§ 544.001, .002(b) (Vernon 1999). A "traffic-control device" is defined as a device that is used to regulate, warn, or guide traffic:

> In this subtitle:
>
> (1) 'Official traffic-control device' means a sign, signal, marking, or device that is:
>
> (A) consistent with this subtitle;
>
> (B) placed or erected by a public body or officer having jurisdiction; and
>
> (C) used to regulate, warn, or guide traffic.

TEX. TRANSP. CODE ANN. § 541.304 (Vernon 1999).

In the context of this provision, we believe that the word "regulate" refers to controlling the flow of traffic, not enforcing traffic regulations. *See* Tex. Att'y Gen. LO-97-018, at 4 (concluding that fatality marker does not regulate flow of traffic and is therefore not traffic-control device for purposes of chapter 544). Thus, we do not believe that the automated enforcement equipment described in the City of Richardson's proposed ordinance is subject to the requirements of section 541.001 of the Transportation Code.

We recognize the practical difficulties that a city might have in successfully prosecuting red-light runners based upon evidence obtained by an intersection camera. However, we believe that because the legislature has already defined a red-light violation and prescribed the penalty therefore, it is within the purview of the legislature to amend the law to allow cities to act in this area if it wishes to do so. We note that in the most recent legislative session, the Texas Legislature

considered a bill that would have expressly permitted cities to adopt exactly the kind of ordinance proposed by the City of Richardson. *See* Tex. H.B. 1115, 77th Leg., R.S. (2001). That legislation failed to pass.

## S U M M A R Y

Absent specific legislative authorization, a home-rule municipality such as the City of Richardson may not adopt an ordinance that imposes a civil penalty for violation of section 544.007(d) of the Transportation Code, which makes the running of red light a crime. The city is not prohibited from adopting an ordinance authorizing the use of automated enforcement equipment to identify criminal red-light violations at roadway intersections.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General