JAMISON *v.* TEXAS.

No. 558.   Argued February 12, 1943.—Decided March 8, 1943.

*Mr. Hayden C. Covington* for appellant.

*Mr. H. P. Kucera* for appellee.

Mr. Justice Black delivered the opinion of the Court.

The appellant, a member of the Jehovah's Witnesses, was charged with distributing handbills on the streets of Dallas, Texas, in violation of an ordinance of that city which prohibits their distribution. She was convicted in the Corporation Court of Dallas, and appealed to the

County Criminal Court where, after a trial de novo, she was again convicted and a fine of $5.00 and costs was imposed. Under Texas law she could appeal to no higher state court,[1] and since she properly raised federal questions of substance in both courts, the case is rightfully here on appeal under § 237 (a) of the Judicial Code. *King Manufacturing Co.* v. *Augusta,* 277 U. S. 100. The appellee has asked us to reconsider the doctrine of the *King Manufacturing Co.* case under which this Court takes jurisdiction on appeal from judgments sustaining the validity of municipal ordinances. We see no reason for reconsidering the *King Manufacturing Co.* case and follow it here.

We think the judgment below must be reversed because the Dallas ordinance denies to the appellant the freedom of press and of religion guaranteed to her by the First and Fourteenth Amendments of the Federal Constitution.

The stipulated facts show that the appellant, after three years of special training, had devoted many years to the work of the Jehovah's Witnesses. At the time of her arrest, the appellant was distributing handbills in an orderly and quiet manner to pedestrians whom she met on the street. On one side of the handbill was an invitation to attend a gathering in a Dallas park, which was to be one of fifty simultaneous gatherings of Jehovah's Witnesses in as many cities, to hear an address by a leader of the group on "Peace, Can It Last." The other side of the handbill repeated the invitation and described at the bottom two books which explained the Jehovah's Witnesses' interpretation of the Bible and set out their religious views. This was followed by a statement that the books would be mailed "Postage Prepaid on your contribution of 25¢." While the books were not actually sold on the streets, the

---

[1] The Texas practice under which this is the highest state court to which appellant could appeal is considered in *Largent* v. *Texas, post,* p. 418.

appellant would have delivered them to the home of anyone who made the twenty-five cents contribution. The books would have cost her more than twenty-five cents.

The Dallas ordinance, which is set forth in the margin,[2] has been construed by the state court to forbid the distribution of leaflets by the appellant in the fashion outlined above.[3] The city seeks to uphold the ordinance here on the contention (a) that it is justified as an exercise of the city's plenary control of its streets, and (b) that appellant's activity may be forbidden because the leaflets include "commercial advertising of books which the distributor is offering for sale."

*First.* The city contends that its power over its streets is not limited to the making of reasonable regulations for the control of traffic and the maintenance of order, but that it has the power absolutely to prohibit the use of the streets for the communication of ideas. It relies primarily on *Davis* v. *Massachusetts,* 167 U. S. 43. This same argu-

---

[2] "Scattering handbills, etc.—It shall be unlawful for any person to carry or hold by hand or otherwise, any billboard, show card, placard or advertisement, or to wear any costume for the purpose of attracting attention of the public, or to scatter or throw any handbills, circulars, cards, newspapers or any advertising device of any description, along or upon any street or sidewalk in the city of Dallas. Any person violating any of the provisions of this article shall be deemed guilty of a misdemeanor, and upon conviction, may be fined in any sum not exceeding one hundred dollars."

[3] The complaint under which the appellant was convicted alleged that she did "carry, hold by hand, distribute, scatter and throw handbills as an advertising medium" in violation of the ordinance. It will be noted that the word "distribute," which does not appear in the ordinance, is a part of the complaint; and that the words "carry or hold by hand," which appear in the first clause of the ordinance as relating to billboards, et cetera, have been applied in the complaint as though relating to "handbills," which appears in the second clause of the ordinance in connection with papers scattered or thrown on the street.

ment, made in reliance upon the same decision, has been directly rejected by this Court. *Hague* v. *C. I. O.,* 307 U. S. 496, 514–516. Of course, states may provide for control of travel on their streets in order to insure the safety and convenience of the traveling public. *Cox* v. *New Hampshire,* 312 U. S. 569, 574. They may punish conduct on the streets which is in violation of a valid law. *Chaplinsky* v. *New Hampshire,* 315 U. S. 568. But one who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion. This right extends to the communication of ideas by handbills and literature as well as by the spoken word. *Hague* v. *C. I. O., supra; Schneider* v. *Irvington,* 308 U. S. 147, 162. Here, the ordinance as construed and applied prohibits the dissemination of information by handbills. As such, it cannot be sustained.

*Second.* The right to distribute handbills concerning religious subjects on the streets may not be prohibited at all times, at all places, and under all circumstances. This has been beyond controversy since the decision in *Lovell* v. *Griffin,* 303 U. S. 444. The city contends, however, that in the instant case the prohibition is permissible because the handbills, although they were distributed for the unquestioned purpose of furthering religious activity, contained an invitation to contribute to the support of that activity by purchasing books related to the work of the group. The mere presence of an advertisement of a religious work on a handbill of the sort distributed here may not subject the distribution of the handbill to prohibition. In *Schneider* v. *Irvington, supra,* we held that the city of Irvington might not forbid conduct almost precisely the same as that with which the appellant in the instant case is charged. Even where handbills carrying notice of a public gathering contained a statement of an admission

fee, we held that they could not be barred from distribution on the streets. *Schneider* v. *Irvington, supra,* 154, 162, 163. No admission was to be charged at the meeting for which the appellant was circulating leaflets in the instant case. In *Cantwell* v. *Connecticut,* 310 U. S. 296, 305, we said that a state might not prevent the collection of funds for a religious purpose by unreasonably obstructing or delaying their collection.

The states can prohibit the use of the streets for the distribution of purely commercial leaflets, even though such leaflets may have "a civic appeal, or a moral platitude" appended. *Valentine* v. *Chrestensen,* 316 U. S. 52, 55. They may not prohibit the distribution of handbills in the pursuit of a clearly religious activity merely because the handbills invite the purchase of books for the improved understanding of the religion or because the handbills seek in a lawful fashion to promote the raising of funds for religious purposes.

*Reversed.*

MR. JUSTICE FRANKFURTER acquiesces in the refusal to reconsider *King Mfg. Co.* v. *Augusta,* 277 U. S. 100, although, for the reasons set forth by Holmes and Brandeis, JJ., dissenting, he deems that case to have been erroneously decided. Otherwise he agrees with the opinion in this case.

MR. JUSTICE RUTLEDGE took no part in the consideration or decision of this case.