Arthur Braun, J.
The defendants sought to protest the arrest and trial of four writers in the Soviet Union. The Soviet Union’s U. N. Embassy is located on 67th Street between Third and Lexington Avenues on the south side of the street.
The police allocated to the protesters an area adjacent to a National Guard Armory on the southwest corner of 67th Street and Lexington Avenue, about one block away.
There were about 20 pickets in all. After a time, apparently having concluded that their protest was not being communicated *1051 to the Embassy, the target of their protest, a few of the pickets crossed to the east side of Lexington Avenue.
There was no testimony that there was any disturbance or that they interfered with vehicular or pedestrian traffic in any way.
The police had erected barricades partially across the northeast and southeast corners of 67th Street. Vehicular traffic was permitted on that street and about three feet of each sidewalk was open for pedestrians.
Four of the five arrests were made within a few feet east of the barricades and the fifth in front of the police precinct on the same block where that defendant had wandered while seeking the Soviet Union’s building. The arrests were made after the police officers stated that the defendants would be arrested if they passed the barricades. They did not heed the warning. It is conceded that the pickets were not violent nor did they threaten violence.
The police justify their order denying picketing before the Embassy on the grounds that there is a security problem in protecting the Soviet Embassy. This prohibition affected picketing whether or not it was peaceful. This policy was established by the Police Department and is not contained in any ordinance or statute.
Neither the city nor the police may permanently close a public street to persons using it for lawful purpose, particularly to those using the streets in the exercise of their First Amendment rights. (City of New York v. Rice, 198 N. Y. 124.)
In Hague v. C. I. O. (307 U. S. 496, 515, 516) the Supreme Court stated: ‘ ‘ Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the street and parks for communication of views on national questions may be regulated in the interest of all; it is also absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.”
In Jamison v. Texas (318 U. S. 413, 416) it was said that: “ One who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in orderly fashion.”
*1052 Schneider v. State (308 U. S. 147, 163) held that liberty of expression is not to be “ abridged on the plea that it may be exercised in some other place.”
In Saia v. New York (334 U. S. 558, 561) the court invalidated a prohibition of loud speakers because they are “ indispensable instruments of effective public speech.”
Cox v. New Hampshire (312 U. S. 569, 574) has been quoted often as illustrative as to whether rules or regulations “ deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.”
It is true of course that First Amendment activities may be restrained as stated in Cantwell v. Connecticut (310 U. S. 296, 308): “ When clear and present danger of riot, disorders, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious. Equally obvious is it that a State may not unduly suppress free communication of views, religious or other, under the guise of conserving desirable conditions.”
The kind of activities that might be constitutionally prohibited appears in Cox v. Louisiana (379 U. S. 536, 554-55): “ One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic conditions, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations.”
Also, in People v. Turner (48 Misc 2d 611, affd. 17 N Y 2d 829, 830), where under the old Penal Law (§ 722, subds. 2, 3, 4), the complaint charged that defendants, with intent to provoke a breach of the peace and under circumstances whereby a breach of the peace might be occasioned, unlawfully congregated and assembled in the vicinity of Duffy Square at 47th Street and Broadway in the City of New York, obstructing the area to the exclusion of those wishing to use it and delaying vehicular traffic while carrying placards and using loud and boisterous language, and by their actions caused a crowd to collect and when ordered to move on, failed to do so, after being informed *1053 that their actions were not lawful, the judgments of conviction there were affirmed.
The testimony here reveals that one of the defendants visited Captain Moulds of the Police Department on the afternoon of December 29, by appointment, to notify him that a demonstration would be held the following afternoon against the Soviet Mission. He was told that the pickets would be required to confine themselves to an area as previously indicated as the area adjacent to the Armory on 67th Street and Lexington Avenue.
On the trial the Captain testified the defendant Solomonow was also informed that “it be a peaceful demonstration, that there be no violence, no loud, abusive language used against the people they’re demonstrating against, that citizens have right of free access, vehicular traffic should be clear, no weapons of any kind were to be carried, no wooden sticks, no placards on wooden sticks * * * which is standard police procedure ”.
In answer to the question on cross-examination, ‘ ‘ I assume that you have an absolute policy of no picketing on 67th Street in the immediate area of the Russian Embassy, is that correct?” the answer of the Captain was “ That’s correct, sir.”
After a time five pickets crossed the avenue to the partial barricade placed on its northeast corner and were there confronted by police officers.
One of the defendants, Solomonow, sat down alongside the barrier on the north side of the street and, when placed under arrest, was assisted to his feet by the police officer and peacefully accompanied him to the police station.
Neither the State nor the city has regulated the use of the streets occupied by the foreign consulates or embassies. In the absence of legislation, administrative officials may not exercise prior restraints on the exercise of the First Amendment rights. (Saia v. New York, 334 U. S. 558, 560, supra). “ To use a loudspeaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate hours or places of use of loud-speakers, or the volume of sound ”.
So, in Edwards v. South Carolina (372 U. S. 229, 236) the court reversed convictions of demonstrators on breach of peace charges, stating: “We do not review in this case criminal convictions resulting from the evenhanded application of a precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be limited or proscribed.”
*1054 In Niemotko v. Maryland (340 U. S. 268, 272) it was held that in the absence of an appropriate statute a parks commissioner who had a practice of giving permits for speaking in public parks where “No standards appear anywhere; no narrowly drawn limitations; no circumscribing of this absolute power; no substantial interest of the community to be served,” was an unconstitutional use of authority.
In Coxy v. Louisiana (379 U. S. 536, 558, supra) it was indicated that administrative officials may be vested with the necessary authority: “It is, of course, undisputed that appropriate, limited discretion under properly drawn statutes or ordinances, concerning the time, place, duration, or manner of use of the streets for public assemblies may be vested in administrative officials. ’ ’
I find no such authority here. Neither city nor State authorizes the police to permanently and absolutely close a public street to those persons seeking to exercise their First Amendment rights. Such prohibition is therefore unlawful.
All of the defendants are found not guilty of the charge of disorderly conduct and Solomonow of the charge of resisting arrest.