MICHAEL, Circuit Judge,
dissenting:
The Establishment Clause forbids a state from coercing “anyone to support or participate in religion or its exercise.” Lee v. Weisman, 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). If the Montgomery County Public Schools (the School System) give Child Evangelism Fellowship of Maryland, Inc. (CEF) access to the School System’s take-home flyer forum, elementary students will be required to distribute CEF’s religious flyers to their parents. The students, in other words, will be coéreed to participate in a religious activity in violation of the Establishment Clause. The School System’s interest in avoiding the Establishment Clause violation, and thereby protecting the individual freedom of the students, is sufficiently compelling to justify the viewpoint discrimination that would result by denying CEF access to the forum. I therefore respectfully dissent from the majority’s decision to reverse the district court’s order denying CEF a preliminary injunction that would give the organization access to the flyer forum.
I.
I disagree with the majority’s conclusion that giving CEF access to the School Sys- *603 tern’s flyer forum — which means that students will be forced to deliver CEF’s religious flyers to their parents — is not likely to violate the Establishment Clause. It is “beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which ‘establishes a [state] religion or religious faith, or tends to do so.’ ” Lee, 505 U.S. at 587, 112 S.Ct. 2649 (quoting Lynch v. Donnelly, 465 U.S. 668, 678, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984)). If CEF has access to the forum, the School System will impermissibly coerce its students both to participate in and to support CEF’s mission “to evangelize boys and girls with the Gospel of the Lord Jesus Christ and to establish (disciple) them in the local church for Christian living.” J.A. 516.
CEF participation in the School System’s flyer forum means that students will be required to deliver flyers soliciting their parents to send them to after-school meetings of the Good News Club. The majority recognizes that the CEF flyer “contain [s] an invitation to participate in a religious activity.” Ante at 601. Thus, the flyer begins: ‘Tour kids are invited to come to Good News Club” at their elementary school. J.A. 46. A permission slip, for a parent to sign, is included in the flyer. “Each club,” the flyer tells parents, “is taught by a dedicated Christian teacher.” J.A. 47. The flyer indicates the religious nature of Club meetings, where activities include “Bible adventures, missionary adventures,” “Bible-oriented ... learning and moral object lessons,” and “Bible review games.” J.A. 46-47. The focus of the meetings is to bring “the Gospel message to children.” J.A. 516. The children are led in Bible study, prayer, and religious song, and they are urged to accept Jesus Christ as their Savior. Club teachers report two numbers each month to CEF’s regional office: the number of children attending Club meetings and “the number of children who have prayed to receive Christ.” J.A. 486. It is undisputed, then, that the Club meetings are a religious activity. Distributing CEF’s flyers is likewise a religious activity because the flyers are an invitation to participate in these evangelical meetings. The School System’s students would therefore be coerced into participating in a religious activity if they are required to deliver CEF’s flyers to their parents. The majority reaches the opposite conclusion. It says there is no unconstitutional coercion for two reasons: first, CEF would simply have equal access to the flyer forum; it would not be singled out “for a special benefit not afforded other similarly situated groups,” ante at 15; and second, distributing CEF’s flyers is not a religious activity. I respectfully disagree.
A.
The majority acknowledges that the School System would (in a broad sense) engage in coercion if it required its students to distribute the CEF flyer. Ante at 597. But it reasons that this coercion is permissible under the Establishment Clause because CEF would not receive “a special benefit not afforded to other similarly situated non-religious groups.” Ante at 597. In other words, because the School System requires students to carry home materials from many community groups (the Audubon Society, as one example), it may also require them to carry home CEF’s flyers. The majority thus concludes that “[djirecting [students] to take home these diverse materials does not coerce them to engage in a religious activity, any more than it coerces them to engage in an environmental activity.” Ante at 599 (emphasis added). There is a difference, however, between coercing reli *604 gious activity and coercing environmental activity. The School System may, without worrying about the Establishment Clause, require students to deliver environmental flyers from the Audubon Society advertising nature classes. J.A. 564. But the Establishment Clause limits the School System’s power to support religion. For that reason, the majority’s observation that CEF only seeks equal access to the flyer forum begins, rather than ends, the Establishment Clause inquiry.
The Supreme Court has never held or suggested that the government may coerce students into participating in a religious activity if both religious and non-religious groups are given equal access to the government’s use of its coercive power. (The real benefit here is access to the School System’s use of its power to require students to take materials home to their parents.) As the majority appears to acknowledge, the Supreme Court has yet to confront a situation where the government provides a religious group equal access to a benefit that results in government coercion of individuals to participate in a religious activity on behalf of that group. See ante at 597. Certainly, determining that a religious group does not receive any special benefit can provide important insight into certain Establishment Clause questions, like whether a law has a secular or religious purpose, Widmar v. Vincent, 454 U.S. 263, 271, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), and whether the government has impermissibly endorsed religion, Board of Education v. Mergens, 496 U.S. 226, 248, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) (plurality opinion). Nevertheless, the Establishment Clause is violated when the government forces a student to participate in a religious activity, even on behalf of a religious group that gets no special benefit in the process. As Justice Kennedy has explained, “it suffices to inquire whether the [government act] violates either one of two principles.” Mergens, 496 U.S. at 260, 110 S.Ct. 2356 (Kennedy, J., concurring) (emphasis added). See also Lee, 505 U.S. at 587, 112 S.Ct. 2649. The first principle is that “the government cannot give direct benefits to religion in such a degree that it in fact establishes a state religion or religious faith, or tends to do so.” Mergens, 496 U.S. at 260, 110 S.Ct. 2356 (Kennedy, J., concurring) (internal quotation marks and alteration omitted). This is largely dependent on whether the benefit is available to a wide variety of groups, both non-religious and religious. See id. (citing one of the Court’s equal access cases, Widmar, 454 U.S. at 273-74, 102 S.Ct. 269). The second principle is that “the government cannot coerce any [person] to participate in a religious activity.” Id. Again, the violation of this second principle alone results in an Establishment Clause violation. This means that giving religious groups equal access to a benefit cannot avoid an Establishment Clause violation when the benefit received is access to the government’s power to coerce participation in a religious activity. Otherwise, for example, public schools would be free to require all students to attend meetings of a religious clubso long as they offered the same benefit to secular clubs by requiring universal attendance at their meetings. Such a result could not be squared with the Establishment Clause. We must therefore go on to consider whether the School System’s students will be engaging in a religious activity if they are required to distribute CEF’s flyers.
B.
The distribution of CEF’s flyers is a religious activity of high order. “The hand distribution of religious tracts [or literature],” an essential exercise in some religious movements, “is an age-old form of *605 missionary evangelism.” Murdock v. Pennsylvania, 319 U.S. 105, 108, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). Sixty years ago, the Supreme Court in Murdock described the hand distribution of religious tracts and flyers as “religious activ-ity” that “occupies the same high estate under the First Amendment as do worship in the churches and preaching from the pulpits. It has the same claim to protection as the more orthodox and conventional exercises of religion.” Id. at 109, 63 S.Ct. 870. In short, Murdock held that a person engaged in the freewill, hand distribution of religious flyers is pro-tected by the Free Exercise Clause. At about the same time, the Supreme Court also held that the Free Exercise Clause protects, as religious activity, the sidewalk distribution of handbills containing an invitation to a religious gathering and an advertisement for religious books. Jamison v. Texas, 318 U.S. 413, 414-16, 63 S.Ct. 669, 87 L.Ed. 869 (1943). (I recognize, of course, that the Supreme Court now analyzes cases involving the distribution of religious literature under the Free Speech Clause rather than the Free Exercise Clause; however, the Court has never retreated from its position that distributing religious tracts or flyers is a religious activity. See Heffron v. Int’l Soc’y for Krishna Consciousness, Inc., 452 U.S. 640, 652-53, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).) CEF’s flyers serve a religious or evangelical purpose, just like the tracts and handbills in Murdock and Jamison. The flyers solicit parents to send their children to Good News Club meetings at school, where “a dedicated Christian teacher” will lead the children in Bible study and other religious activity. Indeed, CEP freely admits that it has “religious reasons for sending flyers home.” Appellant’s Br. at 69. Although the majority claims otherwise, the students’ distribution of CEF’s invitation to the evangelical meetings of the Good News Club is fundamentally different from other things, such as attending classes and taking tests, that the School System may constitutionally coerce its students to do. The difference is that the CEF flyer distribution is done for the religious purpose of increasing attendance at Club meetings, where the teacher works to “evangelize [the students] with the Gospel of the Lord Jesus Christ.” J.A. 515. It is inescapable that the distribution of CEF’s flyers is a religious activity, just as the Club meetings themselves are a religious activity. The Supreme Court has already indicated that a public school cannot coerce its students into attending meetings of a religious club. See Good News Club v. Milford Cent. Sch., 533 U.S. 98, 115, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001). Similarly, a public school should not be able to coerce its students into participating in the related religious activity of distributing invitations to those religious meetings.
To support its conclusion that the School System’s children would not engage in a religious activity if they distributed CEF’s flyers, the majority offers its hypothetical involving a street-corner evangelist. Ante at 600 (“A student who receives a Good News Club flyer and delivers it to his parents is no more engaging in a religious activity than a child who receives the same flyer from a street-corner evangelist and turns to give it to his mother. In both of these cases, the children are merely delivering an invitation to participate in a religious activity, not engaging in that activity.”). This hypothetical is flawed for two reasons. First, it ignores the constitutional meaning of participation in a religious activity. The majority would surely agree that the street-corner evangelist is engaging in a religious activity when he hands the flyer to the child. See Jamison, 318 U.S. at 414-16, 63 S.Ct. 669. Thus, for the majority, the difference in the respective *606 acts of the evangelist and the child lies in the fact that the child may not be acting with a religious motivation when he hands the flyer to his mother. Ante at 600 n. 7. It is well established, however, that a child can participate in a religious activity without having any religious motivation for his participation. For instance, in Lee the Supreme Court was persuaded that when students were pressured to stand in respectful silence while a rabbi prayed aloud at a school graduation, the students were being coerced to participate in the prayer. Lee, 505 U.S. at 593, 112 S.Ct. 2649. In other words, an overtly pious act was not necessary to signify participation in the prayer. Id.; see also id. at 637, 112 S.Ct. 2649 (Scalia, J., dissenting) (“[The majority] does not say, for example, that students are psychologically coerced to bow their heads, place their hands in a Durer-like prayer position, pay attention to the prayers, utter ‘Amen,’ or in fact pray.”); Mellen v. Bunting, 327 F.3d 355, 362 (4th Cir.2003) (finding impermissible coercion when the VMI Corps of Cadets “must remain standing and silent while the supper prayer is read, but cadets are not obliged to recite the prayer, close their eyes, or bow their heads.”). Thus, although neither the child in the hypothetical nor the children in the School System may be acting out of religious motivation when they deliver the flyers to their parents, the children are nonetheless participating in a religious activity.
The second problem with the majority’s hypothetical is that the child is not coerced in any way. To be comparable to this case, the hypothetical should include an element of coercion. For example, if a public school teacher walking down the street with her elementary students tells them that they must accept flyers offered by a street-corner evangelist and deliver them to their parents, the state would be compelling participation in religious activity. In the majority’s hypothetical the child chooses to aid the evangelist in his distribution of flyers; in mine the state compels the children to receive the evangelist’s flyers and in essence to act as his agents in delivering his flyers to their parents. In the majority’s hypothetical, my hypothetical, and the present case, the children all participate in the religious activity of distributing flyers. In the majority’s hypothetical, the child’s act is constitutionally protected because he participates in the religious activity of his own freewill. In my hypothetical and in this case, the state’s coercion of the children to participate violates the Establishment Clause.
CEF’s offer to place its flyers in sealed envelopes does not avoid the Establishment Clause problem created by its participation in the flyer forum. Even with sealed envelopes, the end result is the same: students would still be commandeered by the state to participate in a religious activity. The School System will certainly know the religious nature of the flyers because it approves all flyers that students are required to distribute. The School System should not be able to coerce elementary students into participating in a religious activity just because it can conceal the religious nature of the activity from them. If anything, hiding the flyers in sealed envelopes makes the coercion even more troubling because a student would not have the knowledge to raise a pre-distribution objection if he had the courage to do that. The majority also implies that there will be no coercion of the students here because the parents will decide whether their children will attend the Good News Club meetings. See ante at 597. This overlooks a key fact. Religious activity — distribution of flyers — occurs before any parental decision is made about attendance at the meetings. The parents play no part in deciding whether *607 their children will be required to deliver the religious flyers.*
The majority is too quick to conclude that “[controlling precedent ... strongly indicates that permitting CEF access to [the flyer] forum does not run afoul of the Establishment Clause.” Ante at 591. I see nothing in the First Amendment, the Supreme Court eases, or our own circuit cases that compels or suggests the result reached by the majority today. Indeed, the cases stop far short of authorizing the state to compel anyone to take part in a religious activity. The majority relies quite heavily on the Supreme Court’s decision in Board of Education v. Mergens, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990). In Mergens the Court held that the Equal Access Act, 20 U.S.C. §§ 4071-4074, does not violate the Establishment Clause by requiring a high school to extend official recognition to a Christian club that would, like other extracurricular clubs, meet on school premises during non-instructional time. 496 U.S. at 249-53, 110 S.Ct. 2356. The Court mentioned in passing that official recognition gave the Christian club access, among other things, to the school’s public address system. Id. at 247, 110 S.Ct. 2356. Relying on this passing reference, the majority says that Mer-gens holds that the Establishment Clause does not prevent a school from requiring all students to listen to an announcement, over the public address system, of the time and place for a meeting of a religion club. See ante at 600. That is not the holding in Mergens; nevertheless, because the Court did not express any constitutional concerns about the prospects of such an announcement, I am willing to assume that it had none. But even a broader interpretation of Mergens does not take the majority where it wants to go.
The majority likens CEF’s flyer to the public address announcement in Mergens; both invite students to participate in a religious activity. According to the majority, because CEF’s flyer is simply an invitation to participate in religious activity, the School System would not violate the Establishment Clause if it forced its students to distribute the flyers. This analysis overlooks a key difference between what a student is forced to do while a Mergens-tyge public address announcement is being made and what he would be forced to do with the CEF flyer. In the first instance, the student sits passively while the time and place of a Christian club meeting is announced. Notwithstanding the majority’s argument to the contrary, see ante at 600 n. 7, this passivity is of consequence for what it does not signify: it does not signify that the listening student joins in the announcement or advances its purpose. In the second'instance (our case), the student would be forced by his school to take the CEF. flyer home to his parents; he would be forced to take a demonstrative act that advances the religious purpose of CEF. The second instance involves an Establishment Clause violation because the school is forcing the student to engage in a religious activity, the distribution of flyers. Mergens does not sanction the coercion in the second instance because it does not hold or imply that a school may force a student to go to the public address microphone and an *608 nounce a meeting of the Christian club. In short, Mergens does not suggest that a school can in any way coerce its students to participate in religious activity. Mer-gens is therefore of no assistance to the majority.
Nor is the majority helped by Rosenberger v. Rector and Visitors of University of Virginia, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). At the end of its discussion of equal access, the majority says that “just as the government does not ‘coerce’ a religious activity by requiring students to pay fees used to fund expenses of all student publications, including a magazine established to ‘provide a unifying focus for Christians,’ Rosenberger, 515 U.S. at 826, 842, 115 S.Ct. 2510, so too it does not’coerce’ a religious activity by requiring students to take home a host of flyers and other materials, including CEF’s informational flyer.” Ante at 599. The majority seems to be suggesting that if paying student fees is not a religious activity, then delivering religious flyers is not either. That is reading too much into Rosenberger. First, the Court in Rosen-berger pointed out that whether it was constitutional to require the students to pay the activity fee was not the question presented. 515 U.S. at 840. Second, in rejecting the Establishment Clause challenge to the use of the fees, the Court relied on the fact that the government aid provided (printing services) is secular, and it reasoned that “[a]ny benefit to religion is incidental to the government’s provision of [those] secular services.” 515 U.S. at 843-44, 115 S.Ct. 2510. Here, the benefit to CEF is not the receipt of a secular service, like printing, paid for with School System funds. Rather, the benefit is that the School System will require its elementary students to participate actively in CEF’s religious mission by delivering its message (the flyers) to their parents. Again, the Supreme Court has described the distribution of flyers like CEF’s as a religious activity that “occupies the same high estate under the First Amendment as do worship in the churches and preaching from the pulpits.” Murdock, 319 U.S. at 109, 63 S.Ct. 870. See also Jamison, 318 U.S. at 414-16, 63 S.Ct. 669 (sidewalk distribution of religious handbills). What CEF wants the School System to force its children to do is much more akin to the inherently religious activity in Murdock and Jamison than it is to the payment of printing costs in Rosenberger.
Our circuit cases relied on by the majority, Peck v. Upshur County Board of Education, 155 F.3d 274 (4th Cir.1998), and Brown v. Gilmore, 258 F.3d 265 (4th Cir.2001), do not suggest or support the result the majority reaches today. In Peck we held that a school board did not violate the Establishment Clause when it allowed private parties to sponsor, on one day in the school year, a table of Bibles that were offered to high school students. We noted that neither the board nor the sponsors of the table were compelling or even encouraging students to take Bibles or receive its religious message. Peck, 155 F.3d at 282. In Brown we rejected an Establishment Clause challenge to the Virginia statute that requires local school boards to establish a minuté of silence in classrooms to allow students the individual choices of praying, meditating, or engaging in any other silent activity. After assuming that teachers would simply inform students of all of their options, we held that the statute was not coercive because “the affected students are left to choose how they will use the minute.” Brown, 258 F.3d at 270, 281. Peck and Brown are easily distinguishable because in those cases the students were not coerced to take religious literature or to engage in religious activity. Here, of course, the School System would violate the Establishment Clause’s anti- *609 coercion principle because forcing students to deliver CEF’s flyers coerces them into participating in religious activity.
The Establishment Clause also forbids the state from coercing someone “to support ... religion or its exercise.” Lee, 505 U.S. at 587, 112 S.Ct. 2649 (emphasis added). Requiring students to distribute CEF’s flyers is therefore impermissible on the alternative ground that it supports a religious activity. The School System would coerce support of CEF’s religious mission by forcing students to hand their parents flyers soliciting them to enroll their children in a Good News Club. In the words of CEF, “[u]nless the flyers go forth, Club attendance is small and CEF representatives cannot either evangelize or teach children Biblical character and values.” Appellant’s Br. at 30. Again, the majority’s street-corner evangelist hypothetical helps to illustrate that the School System will be coercing children to support religion. In the hypothetical, the mother’s own child, not the evangelist who is a stranger, freely hands her the religious flyer. The child’s act supports the evangelist’s mission. Similarly, the children in the School System will support CEF’s religious mission by delivering its flyers to their parents. But the support of the students in this case will be coerced, and this violates the Establishment Clause.
C.
I must also consider whether the School System’s interest in avoiding the Establishment Clause violation justifies the viewpoint discrimination against CEF that would occur by denying it access to the flyer forum. In this instance, the Establishment Clause should prevail.
A government regulation that discriminates against private speakers based on viewpoint is subject to strict scrutiny: the regulation must be necessary to serve a compelling governmental interest by the least restrictive means available. Am. Life League, Inc. v. Reno, 47 F.3d 642, 648 (4th Cir.1995). A less restrictive way to avoid an Establishment Clause violation has not been suggested in this case. CEF’s offer to put its flyers in sealed envelopes is not a solution because the students would still be coerced into religious activity. Thus, the question is whether the School System’s interest in preventing a violation of the Establishment Clause is sufficiently compelling to trump CEF’s interest in free expression. The Establishment Clause is more likely to trump the Free Speech Clause in the “coercive context of public schools” where children are required, even conditioned, to follow direction. Berger v. Rensselaer Cent. Sch. Corp., 982 F.2d 1160, 1168 (7th Cir.1993). CEF can participate in the flyer forum only by enlisting the School System to exercise its authority over students, coercing them to engage in religious activity. The School System would thus become the force in violating the constitutional rights of its own students. To prevent that from occurring, the expressive rights of the third party, CEF, must give way. See id.
I recognize that providing religious groups with equal access to limited forums created by the state is an important First Amendment objective. However, in none of the Supreme Court’s equal access cases was any individual forced to engage in religious activity like the students here would be. See, e.g., Good News Club, 533 U.S. at 115, 121 S.Ct. 2093 (Good News Club, like other groups, had to be given access to public school building for meetings after hours; children, however, were not coerced into engaging in religious activity because they would only attend meetings with the permission of their parents); Rosenberger, 515 U.S. 819, 115 S.Ct. *610 2510, 132 L.Ed.2d 700 (public university must make student activity funds available to pay the printing costs of a campus organization’s publication that presents the Christian viewpoint); Lamb’s Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (local school board required to give religious group access to school property to show movies that would be open to the community at large); Mergens, 496 U.S. at 260-61, 110 S.Ct. 2356 (Kennedy, J., concurring) (public school required to extend official recognition to Christian club, but “the government cannot coerce any student to participate in a religious activity.”); Widmar, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (state university must make facilities available for meetings of student religious group). Here, if CEF is allowed access to the flyer forum, the School System will violate the Establishment Clause when it uses its authority over students to coerce them into participating in CEF’s mission to evangelize children — a mission that begins with the distribution of flyers. See Berger, 982 F.2d at 1168. The School System’s interest in avoiding an Establishment Clause violation should prevail in order to protect the individual freedom of the students. In sum, the School System should be able to exclude CEF from the flyer forum.
Finally, even if the Establishment Clause prevails, CEF is not shut out. It has access to rooms at the schools for its Good News Club meetings. It also has access to other forums, specifically, back-to-sehool nights, open houses, and bulletin boards and tables, that are open to other community groups. CEF thus has access to several forums in the School System through which it may invite parents to permit their children to attend Club meetings. CEF would only be unable to use the one forum where CEF participation would require the School System to coerce students to distribute flyers in violation of the Establishment Clause.
D.
For all of the foregoing reasons, I conclude that CEF is not likely to prevail on the merits in this case.
II.
As my analysis indicates, the district court correctly concluded that CEF is not likely to prevail on the merits, the third factor in the court’s decision to deny CEF a preliminary injunction. See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193-96 (4th Cir.1977) (establishing a four-factor inquiry for deciding whether a preliminary injunction should issue). Because the district court properly analyzed all of the Blackwelder factors, I would affirm the order denying CEF a preliminary injunction against the School System.

 The majority suggests that under my approach there would be an Establishment Clause violation every time a mailman delivered a religious flyer or pamphlet. See ante at 600 n. 7. That is not the case. The mailman, in accepting employment with the U.S. Postal Service, agrees to fulfill his duty to deliver the mail. See 39 U.S.C. § 1011. He is therefore not coerced to deliver any mail, including mail with religious content, unlike the students in this case, who would be coerced or commandeered by the School System to deliver CEF’s flyers.