# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3368

_____

Traditionalist American Knights of the Ku Klux Klan, an unincorporated association; Frank Ancona

*Plaintiffs - Appellees*

v.

City of Desloge, Missouri

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 8, 2014
Filed: December 24, 2014

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Traditionalist American Knights of the Ku Klux Klan (the Klan) and its Imperial Wizard Frank Ancona sought a preliminary injunction against enforcement of a Desloge, Missouri ordinance. The district court granted an injunction after concluding that some provisions of the ordinance were not narrowly tailored and violated the First Amendment. The city appeals, asserting that its ordinance was

enacted to protect pedestrian and traffic safety without offending the Constitution. We reverse and remand.

## I.

The city of Desloge, Missouri is a small town located 60 miles southwest of St. Louis on U.S. Highway 67. The most recent census reports that the population of Desloge is 5,054 and that 97.4% of its residents are white. United States Census Bureau, Profile of General Population and Housing Characteristics: 2010 Demographic Profile Data for Desloge, Missouri, available at http://factfinder2. census.gov/bkmk/table/1.0/en/DEC/10_DP/DPDP1/1600000US2919216.

The Klan is a national organization of white Americans which is dedicated to advancing white supremacist principles. Imperial Wizard Ancona has explained that it is "comprised of white Christian patriots, people who care about their nation and their race." He testified, "We do not commit acts of violence, and we believe in perpetuating our race. We believe in having children and grandchildren, white ones. . . . We believe in the Constitution as it was originally written by our forefathers that founded this nation." Members must be 18 years old, white, and Christian.

The record indicates that Klan members regularly distribute leaflets on public streets and sidewalks to spread their messages. The topics addressed in the leaflets submitted as exhibits in this case include the dangers of methamphetamine to the "White Race," a "warning for White Americans" about "violent black on white crime," organizing neighborhood watches, obtaining firearms for protection, and defending "White Christian culture [and] the future of our nation" against Shariah law. The leaflets list a PO Box address for the Klan in Park Hills, Missouri, a town one and one half miles south of Desloge. While distributing leaflets in Desloge, Klan members have worn their robes and hoods which they describe as their "regalia."

A.

The Klan has challenged three different Desloge ordinances prohibiting solicitation or distribution in the city's roadways. These different ordinances were enacted in 1999, on April 8, 2013, and on August 12, 2013. All but the August 12, 2013 ordinance have been repealed, and that ordinance is the only one at issue in this appeal.

Members of the Klan planned to distribute leaflets in Desloge on October 27, 2012. Imperial Wizard Ancona contacted Desloge city officials about its plans and was told that a 1999 city ordinance prohibited "solicitation activities" on public streets and that it would prevent the Klan from distributing its literature on any city road in Desloge. The Klan then went to the federal district court to challenge the 1999 ordinance and seek a preliminary injunction against its enforcement.

The district court issued an injunction against the 1999 ordinance after concluding that it violated the First Amendment because it was not narrowly tailored to serve a significant governmental interest. It decided that the 1999 city ordinance prohibited speech on sidewalks as well as on public roads and that it was not "tailored to particular times, problematic locations, or circumstances under which the City might have legitimate concerns about traffic safety and congestion." Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge, Mo., 914 F. Supp. 2d 1041, 1050-51 (E.D. Mo. 2012). A consent judgment later made the injunction permanent on March 19, 2013.

On April 26, 2013 Imperial Wizard Ancona and other members of the Klan returned to Desloge to distribute leaflets explaining their views on gun rights. They stationed themselves along a sidewalk at a four way stop where they held up their leaflets. If an occupant of a vehicle at the intersection signaled for a leaflet, a Klan member was to step out into the street to supply one. Soon after the Klan members

arrived, they were approached by a police officer who had seen one of them enter the roadway to distribute a leaflet to a vehicle occupant. The officer told them there was a new city traffic ordinance, passed on April 8, 2013, which prohibited "stand[ing] in or enter[ing] upon a roadway for the purpose of soliciting rides, employment, business or charitable contributions from, or distribut[ing] anything to, the occupant of any vehicle." City of Desloge, Mo., Ordinance 2013.04. Imperial Wizard Ancona was given a copy of the new ordinance. After reviewing it, he instructed the Klan members to leave. Subsequently on April 29, 2013, Ancona and the Klan, represented by the American Civil Liberties Union, filed the present action against the city to enjoin enforcement of the April 2013 ordinance on the grounds that it violated their First Amendment rights.

While this litigation was pending, the city amended its traffic ordinance on August 12, 2013 by adding a preamble to explain the law's purpose and by defining key terms. The August 2013 ordinance explained that the city sought to address "public safety concerns," specifically the risk that people soliciting or distributing materials within a roadway would distract drivers and "result in the person in the Roadway being struck by the vehicle during its operation, or the vehicle striking another vehicle or property in an effort to avoid the person in the Roadway." The ordinance indicated that solicitation and distribution were being limited because they pose "a distraction to the operator and occupants of the vehicle and to the pedestrian . . . at a time when the person is a pedestrian in the Roadway." "Roadway" was defined as the entire road, from one curb or pavement edge to another, including parking lanes.

The key portions of the August 2013 distribution ordinance stated:

(2) No person shall stand in or enter upon a Roadway for the purpose of distributing anything to the occupant of any vehicle.

-4-

(3) . . . [T]he Distribution described in subparagraph 2 [is] permissible to an occupant of a non-moving vehicle on the Roadway adjacent to the sidewalk and if the person doing so is on the adjacent sidewalk.

(4) Nothing contained herein is intended to prohibit Solicitation or Distribution by any person on a sidewalk, to another person on the sidewalk, or by and among persons in a city parking lot or city park.

City of Desloge, Mo., Code § 220.205. A violation was punishable by a fine not over $500, imprisonment not over 90 days, or both. Id. at § 100.210. The Klan sought a preliminary injunction to enjoin its enforcement on August 19, 2013, three days before the ordinance was to take effect.

B.

The district court held a hearing on the Klan's preliminary injunction motion. The parties submitted as exhibits the April and August 2013 ordinances, a city resolution affirming that the August ordinance replaced and repealed the April ordinance, four examples of Klan leaflets, photos of Desloge roadways, three letters between the parties, the city's report from traffic consultant David Brammeier, and affidavits from two traffic researchers. The testifying witnesses were Imperial Wizard Ancona, City Administrator Gregory Camp, Brammeier, and the Desloge police officer who had spoken with Ancona on April 13, 2013.

Camp testified that the city enacted its initial traffic ordinance in 1999 to address concerns that groups which solicited donations in the streets, including youth sports teams, might be hit by vehicles. Such safety concerns led the city to continue revising the ordinance in light of constitutional challenges. Camp explained that the August 2013 ordinance allows distribution to the occupant of a vehicle by someone standing on the sidewalk near some of the several stop signs in Desloge. Photographs of the Desloge roadways corroborated this testimony. Camp also added that under

-5-

the city code, individuals may enter a roadway to place literature on parked cars and pedestrians may walk in the street where no sidewalk is available. Skateboarders and rollerbladers are required to keep to the street.

Traffic consultant Brammeier testified about his work for the city which led to the drafting of the August 2013 ordinance. Brammeier explained that he had had 42 years of experience as a professionally licensed traffic and transportation engineer and that he had specialized training in work zone safety. He is a member of the St. Louis firm of Crawford, Bunte, Brammeier, a firm which provides traffic safety consulting services to many Midwestern municipalities. Brammeier had also consulted with the city of Desloge in the past. Before amending its traffic ordinance, the city asked Brammeier to prepare a report identifying and evaluating any safety issues raised by pedestrian distributions or solicitations on public roadways.

In undertaking the assignment, Brammeier began by visiting Desloge to study its roads and traffic patterns. He took 28 photos during this process which are included in his report. He determined that the city's roads raise safety issues for pedestrians, whether or not they are soliciting or distributing materials. For example, the city has open storm drains and grated inlets at intersections which could cause pedestrians to trip and fall. Intersections in various parts of the city do not align at 90 degree angles, and Desloge Drive, one of the main roads in town, has wide curves. Such features restrict the ability of drivers and pedestrians to see one another. Other hazards which Brammeier identified in Desloge included unpaved sidewalks, several excessively large commercial driveways, and stop signs obstructed by foliage.

Brammeier also evaluated potential risks from pedestrian distributions or solicitations in an active roadway. He explained that while he had not been able to find any existing literature on these specific questions, he had reviewed over 100 sources dealing with road safety. Among these sources were articles about safety plans designed to protect people working in and about streets, such as construction

and utility workers. Even with carefully designed control measures in place, such workers become victims of traffic accidents. Brammeier testified that an important factor in his analysis included information from the National Highway Transportation Safety Administration. Each year 5,000 pedestrians are killed on United States roads and 71,000 are injured.

Brammeier concluded from his studies that road intersections are dangerous for pedestrians and that safety is of special concern. His report recommended that the city of Desloge prohibit solicitation and distribution in its roadways because "[t]he inherent possibility of personal injury to the distributor/solicitor combined with the concern for safety of the motoring public, creates enough distractions to restrict these activities." Brammeier also testified that in his opinion there is no significant difference in safety risks associated with distribution as opposed to solicitation. On cross examination, he acknowledged that intersections are not all equally hazardous and that statistical analyses could be done to determine the most dangerous times and locations. He had not conducted such an analysis in Desloge, and he acknowledged that other potentially dangerous distractions to drivers exist, such as texting.

The Klan in turn submitted affidavits from two traffic policy researchers who criticized Brammeier's conclusions and methods. Unlike Brammeier they had not visited Desloge to examine its roadways and traffic patterns.

C.

The district court determined that Ancona and the Klan had standing to challenge the distribution provisions of the Desloge ordinance, but none related to solicitation since the Klan had not undertaken any efforts to solicit in Desloge. The court subsequently decided that the distribution provisions were not narrowly tailored and that the Klan was likely to prevail on the merits of its First Amendment

challenge. Concluding that the other requirements for a preliminary injunction had been met, the district court granted the Klan's motion. The city appeals.

## II.

When deciding whether to grant a preliminary injunction, a court is to consider the likelihood that the movant will succeed on the merits of its claims, the threat of irreparable harm to the movant, the balance between this harm and the injury to the nonmovant caused by granting the injunction, as well as the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The city of Desloge urges that the district court's injunction was not supported by the Dataphase factors, id., especially since the Klan had not shown it was likely to succeed on the merits. We review the district court decision for abuse of discretion, reversing if it rests on "clearly erroneous factual findings or erroneous legal conclusions." S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012).

The parties agree that the August 2013 ordinance regulates speech in the public streets of Desloge, a traditional public forum. See, e.g. Frisby v. Schultz, 487 U.S. 474, 480 (1988). The Klan also concedes on appeal that § 220.205 is content neutral on its face and that intermediate scrutiny should therefore be applied. See Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 689 (8th Cir. 2012) (en banc). Content neutral regulations of the time, place, or manner of speech in a public forum are permissible under the First Amendment if "they are narrowly tailored to serve a significant governmental interest and . . . they leave open ample alterative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quotation omitted). The Klan does not dispute either (1) that pedestrian and traffic safety are significant governmental interests or (2) that the city of Desloge has left open ample alternative channels for communication.

The key issue on appeal is whether the district court abused its discretion in determining that the August 2013 ordinance was not narrowly tailored to serve the city's significant interests in pedestrian and traffic safety. To be narrowly tailored, a regulation must not "'burden substantially more speech than is necessary to further the government's legitimate interests.'" McCullen v. Coakley, 134 S. Ct. 2518, 2535 (2014), quoting Ward, 491 U.S. at 799. The city was therefore required to make a "threshold showing that the factual situation demonstrate[d] a real need for [it] to act to protect its interest." Assoc. of Comm. Orgs. for Reform Now v. St. Louis Cnty., 930 F.2d 591, 595 (8th Cir. 1991). Once a governmental entity has made such a showing, its "choice among the means to accomplish its end is entitled to deference," St. Louis County, 930 F.2d at 595, and the regulation "'need not be the least restrictive or least intrusive means of' serving the government's interests," McCullen, 134 S. Ct. at 2535, quoting Ward, 491 U.S. at 798.

A.

At the heart of the matter before us is whether the city of Desloge "acted in response to a real, not speculative, danger" when it enacted the August 2013 ordinance. St. Louis County, 930 F.2d at 596. At issue in our St. Louis County case was the constitutionality of a regulation which prohibited some types of roadway solicitation. 930 F.2d at 593. There, the record showed that the county had enacted its ordinance "to promote pedestrian and motorist safety." Id. Expert testimony indicated that "in-the-roadway solicitation generally is dangerous" and no known techniques would make it safe. Id. We determined on appeal that the county had demonstrated a "real need" to act to protect its significant governmental interest in safety, and we quoted the district court's observation that "there can be no doubt from the evidence, as well as one's own common sense, that soliciting in the streets is inherently dangerous." Id. at 594, 596.

The record here includes testimony, from both City Administrator Camp and traffic consultant Brammeier, that the city of Desloge had passed several ordinances to promote traffic safety. Camp testified that the city had enacted its 1999 ordinance restricting street solicitations in order to avoid injuries from passing traffic. Later, while working on a new ordinance protecting both pedestrians and drivers, the city consented to an injunction against enforcement of its 1999 ordinance. The city hired Brammeier to identify safety risks created by solicitation or distribution in active roadways and to recommend how it might address them. Although Brammeier was unable to locate expert resources focusing on specific risks from roadway solicitations and distributions, his review of the available literature showed that such activities in trafficked roadways create serious hazards. His report pointed out that pedestrians distributing materials in roadways are endangered by passing traffic which stops and starts unpredictably. Drivers may also be distracted by pedestrians in the road or even fail to see them. The fact that a pedestrian had not yet been hit while distributing materials in the city did not mean that it was not dangerous, for a "government need not wait for accidents to justify safety regulations." St. Louis County, 930 F.2d at 596. In sum, there is record evidence that such safety concerns for pedestrians and vehicles in the city's roadways were identified before passage of the Desloge August 2013 ordinance.

B.

The Klan argues that even if Desloge could demonstrate safety concerns requiring its action, its ordinance was not narrowly tailored to meet these needs and the city had not shown that a more targeted regulation on distribution at specific dangerous intersections or times would have been inadequate. The city responds that its ordinance is narrowly tailored to satisfy First Amendment concerns while protecting the safety of both pedestrians and passing traffic. It also directs attention to circuit court decisions upholding similar regulations over constitutional challenges.

See Ater v. Armstrong, 961 F.2d 1224, 1230 (6th Cir. 1992); St. Louis County, 930 F.2d at 596-97.

In St. Louis County, a summary judgment upheld a county regulation over a First Amendment challenge by a nonprofit organization soliciting in roadways. 930 F.2d at 593. A county traffic code prohibited persons standing in the roadway to solicit charitable contributions. Id. The appellant nonprofit group had regularly sought donations by a "toll road" method. Id. Solicitors would wait at a traffic light until it turned red, then step into the road to seek contributions and distribute informational leaflets to the stopped vehicles. Id. Although an expert testified that the group's method was safe when solicitors followed his eight point plan, video evidence showed that solicitors did not always do that and sometimes remained in the road after the lights turned green. Id. at 593-94. While the nonprofit organization argued that the county regulation was not narrowly tailored because it prohibited all solicitations, whether dangerous or not, id. at 596, we determined that "the relationship between the regulation and the government's interest in safety and traffic efficiency [was] sound." Id. at 596. The county's choice of regulation was therefore entitled to deference. Id. Since the county "'could reasonably have determined that its interests overall would be served less effectively without [the regulation] than with it,'" id. at 597, quoting Ward, 491 U.S. at 801, the organization's constitutional claim failed.

The Desloge ordinance focused on roadway distribution of literature to vehicle occupants, and the city produced evidence to show that the ordinance was enacted to address its traffic safety concerns. Many forms of literature distribution remain unrestricted by the ordinance. For example, the ordinance permits pedestrians to distribute materials on sidewalks and on trails, in city parking lots and parks, and in front of the city hall and library. Camp testified that distribution of materials to vehicle occupants by persons standing outside of the roadway is still possible at some of the stop signs in Desloge. We conclude from the record here that the Desloge

-11-

ordinance is narrowly tailored to serve its asserted interests, those being to prevent harm to pedestrians or to persons seeking to distribute materials to vehicles in the roadways while permitting distributions along the side of the roadways and at other locations in Desloge.

The Klan seeks to distinguish St. Louis County by pointing out that the regulation in that case dealt with solicitations in traffic rather than with leaflet distribution. The district court agreed, considering solicitation efforts more disruptive than distribution, citing International Society for Krishna Consciousness v. Lee (Lee I), 505 U.S. 672, 683-84 (1992). See id., 505 U.S. at 689-90 (O'Connor, J., concurring); see also Lee v. Int'l Soc. for Krishna Consciousness (Lee II), 505 U.S. 830, 831 (1992) (per curiam). The governmental interest in avoiding congestion in crowded New York City airport terminals supported prohibition of solicitations but the distribution of written materials did not present the same time concerns there. Lee I, 505 U.S. at 683-85, 689-90; see Lee II, 505 U.S. at 831. These Lee cases are inapposite. Here, the Klan has not made efforts to solicit in Desloge. Moreover, the congestion concerns there have not arisen in Desloge. The governmental interests identified in this case are traffic and pedestrian safety rather than lessening obstacles to free circulation in busy airports. The record here shows that the Desloge ordinance was developed as a safety measure to regulate only the distribution of materials in the Desloge roadways.

The Sixth Circuit's decision in Ater v. Armstrong, 961 F.2d at 1226, has striking similarities to the one now before our court. There, members of a different Klan group sought to distribute literature while standing on roadways or medians in a Kentucky county . County officials notified the Klan that a state statute prohibited persons from standing in roadways and medians (except for solicitations in specially marked places). Id. The Grand Dragon of the Klan group sued to contest the constitutionality of the statute. Id. The Sixth Circuit rejected his argument that the

-12-

Kentucky statute was not narrowly tailored, and summary judgment was therefore affirmed for the defendant officials. Id. at 1230.

Drawing on the Supreme Court's decision in Ward v. Rock Against Racism, 491 U.S. at 800, the Ater court ruled that the Kentucky statute was not "substantially broader than necessary to achieve the government's interest" because it prohibited only distribution or solicitation in the roadways, concluding that the state's "legitimate interest in safety would support the prohibition of all pedestrian activities on its roadways." Ater, 961 F.2d at 1229. The statute was narrowly tailored because its prohibition on "the distribution of literature in the roadways . . . eliminate[d] no *more* activity than was considered necessary" to achieve the interest in traffic safety. Id. (emphasis in original). The Klan's argument that the Kentucky statute was impermissibly underinclusive was rejected since it "clearly serve[d] the state's interest" and there was no sign of a "discriminatory motive" for excepting a particular form of solicitation from the general prohibition. Id.

In considering the Missouri Klan's motion for a preliminary injunction, the district court dismissed the relevance of Ater, concluding that it conflicted with certain Supreme Court cases. A close examination of these two cases shows, however, that no conflict exists. Schneider v. Town of Irvington, 308 U.S. 147, 154-57 (1939), concerned the constitutionality of three city ordinances which prohibited leaflet distribution on both sidewalks and roads, including from one pedestrian to another. The Supreme Court concluded that the municipalities' asserted interest to prevent littering was not significant enough to support such broad First Amendment restrictions. Id. at 162. Similarly, in Jamison v. Texas, 318 U.S. 413, 415-16 (1943), a city's interest in "plenary control of its streets" did not support a very broad prohibition on distribution of written material "at all times, at all places, and under all circumstances." The Jamison regulation was also constitutionally suspect as a restriction on commercial speech (the religious handbills distributed by petitioner had contained an advertisement for books). Id. at 414, 416-17.

-13-

The records in the cases before our court and the Sixth Circuit were different from those before the Supreme Court in the matters cited by the district court. Here, the record shows that the fundamental intent of the city of Desloge in enacting its ordinance was to protect safety — both for traffic and for people seeking to distribute leaflets. The Desloge ordinance also left open other options for the Klan to make its materials available in the city.

C.

The district court concluded that the August 2013 ordinance is not narrowly tailored because it is both overinclusive and underinclusive. The Klan argues that the city could have enacted narrower restrictions on distribution limited to particular intersections or times of day and by not including parking lanes and medians. "The fact that the coverage of a statute is broader than the specific concern that led to its enactment [may be] of no constitutional significance." Hill v. Colorado, 530 U.S. 703, 730-31 (2000). What matters is whether the significant governmental interest addressed by the regulation is served, see id., and "the validity of the regulation is judged by its general effect, not whether enforcement in a particular case is necessary to protect" the asserted interest, St. Louis County, 930 F.2d at 595.

The traffic safety concerns the city identified as its reasons for the ordinance are present whenever a pedestrian steps into the roadway to distribute materials to a vehicle occupant. Alternative opportunities for distribution do exist in Desloge. For example, groups can distribute leaflets to drivers who stop at the edge of a road, pedestrians can stand on a sidewalk to distribute, and the Klan can make its leaflets available at other locations within the city.

The Klan argues that the Supreme Court decision in McCullen v. Coakley, 134 S. Ct. at 2518, (released after the district court's decision) increased the government's burden on an overbreadth challenge. The Massachusetts statute at issue in McCullen

-14-

restricted access within 35 feet of the entrance to an abortion facility. 134 S. Ct. at 2526. The court decided it was not narrowly tailored because it burdened "substantially more speech than necessary." Id. at 2539-40. A prior version had placed restrictions on approaching people for purposes such as counseling and protest within 18 feet of the entrance to a facility and "was modeled on a similar Colorado law . . . upheld in Hill v. Colorado." Id. at 2525. Although the government claimed it had revised the statute because an earlier statute was too difficult to enforce, there was no record of any prosecution under it. Id. at 2539. The McCullen Court concluded that Massachusetts could therefore not "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." Id. at 2540.

It is far from clear that the Court was intending in the McCullen abortion case to change the law on narrow tailoring. While quoting its longstanding precedent in Ward to define narrow tailoring, McCullen, 134 S. Ct. at 2534-35, at no point did the Supreme Court announce a new rule. In contrast to McCullen, the record here does not show an obvious, less burdensome alternative that the city of Desloge should have selected. Testimony from Camp and Brammeier sufficiently demonstrated that safety concerns arising from distribution of materials on the roadways led to passage of the August 2013 ordinance. We conclude that the ordinance is not impermissibly overbroad.

The Klan also argues that the August 2013 ordinance is underinclusive because it does not prohibit other activities which can distract drivers (texting for example) and because the city allows pedestrians to be in the roadways for other purposes (such as walking where there is no sidewalk, skateboarding, or rollerblading). A regulation may be impermissibly underinclusive under the First Amendment if unregulated "modes of expression that implicate the same interest . . . raise[] serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." Johnson v. Minneapolis Park and

-15-

Recreation Bd., 729 F.3d 1094, 1100 (8th Cir. 2013) (quotation omitted). The Klan argues that its examples of underinclusiveness raise such doubts with respect to the Desloge ordinance because the unregulated activities "pose at least as much risk" as distributing leaflets in the roadways.

Unlike Johnson, the record here does not indicate that the city's real motive for curtailing speech activities was to discriminate against particular messages. See Johnson, 729 F.3d at 1096-97, 1100-01. There is no evidence that the city chose to leave texting while driving unregulated because it preferred the messages communicated by texting to those communicated through leaflet distribution. The city is "entitled to attack problems piecemeal, save where [its] policies implicate rights so fundamental that strict scrutiny must be applied." Zauderer v. Office of Disciplinary Counsel of the S. Ct. of Ohio, 471 U.S. 626, 651 n.14 (1985). There is no evidence that the August 2013 ordinance was created to curtail the Klan's message or its speech in the city of Desloge. We conclude that the ordinance is not impermissibly underinclusive.

### III.

For these reasons we conclude that the district court abused its discretion in granting a preliminary injunction against enforcement of the August 2013 ordinance of the city of Desloge. The judgment of the district court is therefore reversed and vacated, and the case is remanded for proceedings not inconsistent with this opinion.

LOKEN, Circuit Judge, dissenting.

In my view, the district court in a careful and thorough opinion applied the correct preliminary injunction and First Amendment standards in granting plaintiffs' motion for a preliminary injunction. Recognizing that our review of constitutional issues must be *de novo*, see Johnson v. Minneapolis Park & Rec. Bd., 729 F.3d 1094,

-16-

1098 (8th Cir. 2013), I would affirm for reasons the district court explained at length. As the court succinctly stated, "*Johnson* is instructive insofar as it analyzes an assumedly content neutral ban on distribution that silenced an unpopular speaker in a traditional public forum." Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge, 983 F. Supp. 2d 1137, 1147 (E.D. Mo. 2013).

---